JOSEPHINE SHANNEY *vs.* BOSTON MADISON SQUARE GARDEN CORPORATION.

Suffolk.    November 4, 1936. — December 2, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Negligence*, Hockey rink, Assumption of risk.

The evidence did not permit a ruling as a matter of law on the evidence that the danger of being struck by the puck was obvious to a patron of a hockey rink watching a game for the first time from a side seat, or that he assumed the risk of being struck; and evidence that the puck sometimes would be driven into the side seats warranted a finding that the proprietor of the rink was negligent in neither providing protection for such a patron nor warning him of the danger.

TORT. Writ in the Superior Court dated March 18, 1932.

The action was tried before *Greenhalge*, J., who denied a motion that a verdict be ordered for the defendant. There was a verdict for the plaintiff in the sum of $2,500. The judge reported the action to this court for determination.

*L. C. Doyle*, (*John J. Sullivan* with him,) for the defendant.

*B. J. Killion,* (*J. F. Connolly* with him,) for the plaintiff.

QUA, J. The defendant operated a large indoor amphitheatre known as "Boston Garden," in which hockey games were played upon artificial ice. On the evening of January 9, 1932, the plaintiff, while a spectator at one of the games, was suddenly struck and injured by a "puck" which was driven off the playing surface.

The plaintiff's sister bought the tickets for herself and the plaintiff. The defendant's usher took them to their seats. The defendant gave no notice of the danger from flying "pucks." The players were not employees of the defendant. No contention is made that the defendant is liable for any negligence on their part in driving the "puck." The plaintiff rests her case upon the contention that the defendant failed to perform the duty which it owed to her as its invitee to use due care to see that its premises were reasonably safe for the intended use or to warn her of dangers which were not obvious. This general duty of the proprietor of a place of amusement toward his patrons is illustrated in a number of recent cases. *Blanchette* v. *Union Street Railway,* 248 Mass. 407. *Hale* v. *McLaughlin,* 274 Mass. 308. *Wilson* v. *Norumbega Park Co.* 275 Mass. 422. *Tovey* v. *G. E. Lothrop Theatres Co.* 288 Mass. 346. *Kushner* v. *McGinnis,* 289 Mass. 326. *Robinson* v. *Weber Duck Inn Co.* 294 Mass. 75. The defendant does not attack the principles thus laid down. It takes the position that the danger of a "puck" flying out among the spectators at a hockey game is inherent in the nature of the sport itself, and practically unavoidable, that persons attending such a game must be presumed to know where they are going, and that the risk is in effect an obvious one which the patron must be held to have assumed. This presents the decisive issue in the case. It calls for further examination of the evidence.

The playing surface, oval in shape, was one hundred ninety-two feet in its greatest length and eighty-two feet in its greatest width. It was surrounded by a fence or "dash" three feet and one inch high. At each end of the rink back of the "goal" a wire mesh screen six feet high

was placed on top of the "dash" for a distance of one hundred nine feet and nine inches. There was no screen on the sides. The object of each team was to drive the "puck" into the "goal" at the end protected by the other team. All around the rink behind the "dash" were rising tiers of seats divided into sections the precise arrangement of which is not material. There were over eight thousand seats, of which slightly fewer than half were occupied when the plaintiff was injured. The plaintiff testified that the seat to which she was shown was at the side of the rink, where there was no screen, and in the second row behind the "dash" very close to the ice, that this was the first hockey game she had ever attended and that she had no knowledge that "pucks" were likely to fly among the spectators where she was sitting. That "did not occur to her." The "puck" was a hard rubber disk one inch thick and three inches in diameter. There was much evidence that in the course of play a "puck" would sometimes hit a player's stick or skate or body and be deflected into the spectators' seats, particularly into the first two or three rows of the promenade section, in which the plaintiff's seat was located.

Upon the evidence the court rightly refused to rule as matter of law that the risk was obvious. Primarily the game was played upon the playing surface of the ice and not in the air. The object was to drive the "puck" to or from the "goals" at the ends of the rink and not sidewise across the rink. The flying off of the "puck" into the vicinity where the plaintiff sat seems to have been an occasional event which took place often enough so that the jury might find that the defendant with its familiarity with the game and the place ought to have anticipated it, but that the possibility of danger from that source would not naturally occur to the mind of a patron who had never seen it happen. To the plaintiff it might seem that the three foot fence offered adequate protection on the sides of the rink and that if more was needed the defendant would have provided screening as it had done at the ends of the rink.

She had a right to rely to some extent on the expectation that the defendant would not direct her to a seat in a place of danger. There was no presumption that the plaintiff knew and appreciated the risk. It cannot fairly be said that ice hockey contests of this kind are now such a familiar experience in life that all persons can be expected to understand incidental risks which are not visually apparent. There must be many who are in attendance for the first time. Yet the defendant invites all alike. The jury could find that the defendant was negligent and that the plaintiff was in the exercise of due care and that she did not assume the risk. See *Thompson* v. *Lowell, Lawrence, & Haverhill Street Railway,* 170 Mass. 577; *Wells* v. *Minneapolis Baseball & Athletic Association,* 122 Minn. 327; *Cincinnati Base Ball Club Co.* v. *Eno,* 112 Ohio St. 175.

The defendant has called our attention to several cases in other jurisdictions holding under various circumstances that a spectator at a baseball game assumed the risk of being struck by the ball and to the cases of *Hammel* v. *Madison Square Garden Corp.* 156 Misc. (N. Y.) 311, and *Ingersoll* v. *Onandaga Hockey Club, Inc.* 245 App. Div. (N. Y.) 137, wherein these cases are cited and their principle applied to a hockey game. Whether the baseball cases are distinguishable it is unnecessary now to determine. We are not inclined to agree with the two decisions last mentioned. Cases as they arise must be decided by the application of general principles to the particular facts shown and not by arbitrary classification according to the names of various games.

*Judgment for the plaintiff on the verdict.*