[Civ. No. 12336. Second Appellate District, Division Two.—December 29, 1939.]

MARY KATHERINE THURMAN, a Minor, etc., et al., Appellants, v. ICE PALACE (a Corporation) et al., Respondents.

Murchison & Clopton for Appellants.

Shattuck & Davis, Reginald I. Bauder, James G. Scarborough and Don Petty for Respondents.

McCOMB, J.—From a judgment in favor of defendants predicated upon the granting of their motion for a directed verdict in an action to recover damages for personal injuries caused by the alleged negligence of defendants, plaintiffs appeal.

There is also a motion of defendants Alfred Fitzgerald, Jerome Beranek, Fergus Rowland, Nathaniel Harty, Earl Robson, Howard Smith, Benny Novicki, L. A. Armstrong, John Mariucci, John Hokanson, Ray H. Wallace, Loane Randall, and Richard Kroll to dismiss the appeal or affirm the judgment as to them.

The essential facts are:

March 24, 1938, Mary Katherine Thurman, aged eighteen and daughter of plaintiff Robert M. Thurman, suffered injuries when she was struck in the mouth by a hockey puck while watching an ice hockey match in a pavilion known as the Ice Palace. The Ice Palace was owned by the defendant Ice Palace, a corporation, which had entered into an agreement with the Associated Student Body of the University of Southern California for the playing of the ice hockey match, which plaintiff Mary Katherine Thurman was witnessing. This agreement provided for the division of the gate receipts between said defendants and granted to the defendant Associated Student Body of the University of Southern California the right to all proceeds from the printing and distribution of programs, reserving to defendant Ice Palace, a corporation, all concessions in and about the premises, including auto park, restaurant, shoe shine stand, and all games of amusement other than the ice hockey game, together with the exclusive right to all of the proceeds from the operation of said concessions and said games of amusement.

Defendant Arnold Eddy is graduate manager of defendant Associated Student Body of the University of Southern

California. The balance of the defendants were players on the ice hockey teams.

The Ice Palace contained a rink in size, construction, and equipment conforming to the general custom and usage of such rinks prevailing throughout the United States and Canada. The skating surface was a sheet of ice approximately 194 feet long and 80 feet wide encompassed by a solid wooden wall three and one-half feet high. Tiers of seats for spectators surrounded the playing surface, those closest to the rink being box seats separated from the ice only by a wooden wall. A wire screen for the protection of spectators had been erected at each end of the rink. It extended upward from the wooden wall and for approximately 10 to 16 feet along both sides. The spectators' seats were approximately 160 feet along each side of the rink and were not protected by screens. There were no signs giving any warning of danger to spectators, although on prior occasions spectators had been struck by flying pucks during the playing of ice hockey games.

About 10 minutes before plaintiff Mary Katherine Thurman received her injury, she entered the rink and was seated in a box on one side of the rink, which was unprotected by any wire screen. She had never seen an ice hockey game before and had not theretofore been in the Ice Palace. Shortly after she was seated, the puck, a hard rubber disk approximately three inches in diameter and one inch in thickness, was driven off the ice and struck plaintiff Mary Katherine Thurman in the mouth, causing serious personal injury.

■ This is the sole question necessary for us to determine:

*Does a spectator at an ice hockey game, who voluntarily selects a seat, which is not protected by a screen, on the edge of the rink, as a matter of law assume the risk of being struck by a puck used in the game?*

This question must be answered in the negative. Although the State of New York holds to the contrary (*Ingersoll* v. *Onondaga Hockey Club, Inc.*, 245 App. Div. 137 [281 N. Y. Supp. 505]; *Hammel* v. *Madison Square Garden Corp.*, 156 Misc. 311 [279 N. Y. Supp. 815]), we believe the correct rule of law to be that it is a question of fact to be determined by the jury from all of the evidence whether the

defendants were negligent in not providing either notices warning patrons of danger from flying pucks or screens to protect the spectators in case a puck should be driven above the railing surrounding the rink. (*Shanney* v. *Boston Madison Square Garden Corp.*, (Mass.) (1936) 5 N. E. (2d) 1; *James* v. *Rhode Island Auditorium, Inc.*, (R. I.) (1938) 199 Atl. 293, 294.) A full discussion of the reasons for this rule, which it is unnecessary to repeat here, will be found in the Massachusetts and Rhode Island cases just cited.

Defendants rely upon *Quinn* v. *Recreation Park Assn.*, 3 Cal. (2d) 725 [46 Pac. (2d) 144]. In that case the plaintiff was a high school student who was active in several kinds of athletics, including baseball. She had frequently attended professional baseball games at the baseball park at which the accident occurred and knew the frequency with which foul balls had been batted into the grandstand. The grandstand contained an unusually large number of screened seats, some in the section along the first-base line and some behind the home plate. The plaintiff asked the ticket seller for a screened seat near first base and not behind the home plate. When she reached the grandstand the usher escorted her to an unscreened seat near first base, all of the screened seats on that side being occupied. At the time she was assigned to her seat there were a number of unoccupied screened seats in the section behind the home plate. During the game she was struck by a ball batted by one of the players. She admitted knowing that at the time she took the unscreened seat she would be in danger of being struck by a batted ball. In sustaining the action of the trial court in directing a verdict for the defendant the reviewing court said at page 729:

" . . . The duty imposed by law is performed when screened seats are provided for as many as may be reasonably expected to call for them on any ordinary occasion (*Wells* v. *Minneapolis Baseball etc. Assn.*, 122 Minn. 327 [142 N. W. 706, Ann. Cas. 1914D, 922, 46 L. R. A. (N. S.) 606]; *Brisson* v. *Minneapolis Baseball etc. Assn.*, 185 Minn. 507 [240 N. W. 903]; and if as in the cases of *Wells* v. *Minneapolis Baseball etc. Assn.*, *supra*, and *Kavafian* v. *Seattle Baseball Club Assn.*, 105 Wash. 215 [177 Pac. 776, 181 Pac. 679]) a spectator chooses to occupy an unscreened seat, or as in the Brisson case, *supra*, is unable to secure a screened seat

and consequently occupies one that is not protected, he assumes the risk of being struck by thrown or batted balls; and if injured thereby is precluded from recovering damages therefor. As aptly said in *Cincinnati Baseball Club Co.* v. *Eno,* 112 Ohio St. 175 [147 N. E. 86], it is common knowledge that in baseball games hard balls are thrown and batted with such great swiftness they are liable to be thrown or batted outside the lines of the diamond, and spectators occupying positions which may be reached by such balls assume the risk of injury therefrom.''

█ It is not common knowledge that pucks used in ice hockey games are liable to be batted into the section occupied by the spectators. Indeed, the puck is ordinarily batted along the surface of the ice, but in a baseball game the ball is ordinarily batted into the air rather than along the surface of the playing field.

The rule which has apparently uniformly been applied to baseball cases is, we believe, inapplicable to ice hockey games, for the reason that the average person of ordinary intelligence in this country is familiar with the game of baseball and it is reasonable to presume that such person appreciates the risk of being hit by a pitched or batted ball without being specifically warned of such danger. Hence a spectator at this nationally known game may ordinarily be held to assume such risk. However, the average person does not have the same knowledge respecting ice hockey or the risk of being hit by a flying puck while observing such a game. The game of ice hockey is practically a new one so far as the State of California is concerned and has only been played at regular intervals in this state for approximately twelve years last past.

█ With reference to the defendants who move to dismiss the appeal or affirm the judgment, there is a total lack of any evidence showing that they were in any way connected with the management or shared in the proceeds or had any interest in the venture. Therefore, the judgment should be affirmed as to them.

For the reasons set forth above the judgment in favor of Ice Palace, a corporation, and Associated Student Body of the University of Southern California is reversed.

The motion to dismiss is denied and the judgment is affirmed as to the other defendants.

Moore, P. J., and Wood, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 26, 1940.