ROSAIRE OLIVER LEMOINE *vs.* SPRINGFIELD HOCKEY
ASSOCIATION, INC.

Hampden.    September 19, 1940. — October 30, 1940.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Negligence,* Hockey rink, Contributory, Assumption of risk.

The issues of contributory negligence of the plaintiff, of voluntary assump-
tion of risk on his part and of negligence of the defendant were proper
for consideration of the jury at the trial of an action against the pro-
prietor of a hockey rink for personal injuries sustained by a patron
struck by a puck as, because of illness, he was passing along a prome-
nade near the side of the rink to a rest room during a game, where there
was evidence warranting findings that he did not know that pucks had
landed in the promenade, that the danger thereof was not obvious, and
that the defendant from knowledge acquired from many games knew
that there was a reasonable probability that a puck might be driven
into the promenade unless precautions were taken to guard against such
occurrence.

TORT.    Writ in the Superior Court dated February 3,
1937.

Before *Broadhurst,* J., a verdict was returned for the
plaintiff in the sum of $500.

The case was submitted on briefs.

*H. P. Small & C. R. Brooks,* for the defendant.

*L. J. Deitz,* for the plaintiff.

RONAN, J.    The plaintiff, while attending a hockey game
at the defendant's arena on January 19, 1937, became ill
and, accompanied by two companions, left his seat and was
proceeding along an aisle on his way to the rest room when
he was injured by being struck in the face by a hockey puck.
The jury returned a verdict for him.    The case is here upon
the defendant's exception to the denial of its motion for a
directed verdict.

The rink or playing surface was oval in shape, having a
maximum length of about one hundred ninety feet and a
maximum width of about eighty-seven feet, and was en-

closed by a fence three or four feet in height. Immediately back of this fence on the side of the rink were two rows of seats and behind these seats was another fence five feet in height. Beyond this second fence was the aisle or promenade along which the plaintiff was walking at the time he was injured. This aisle was fifteen feet wide, and was used by patrons in going to and from their seats and as a place to stand and witness the game by those who had purchased general admission tickets. Beyond this aisle were boxes and seats divided into various sections. The goals were located at the ends of the rink. The seating sections at each end of the rink were protected by a screen seventy-six feet in length and five feet in height above the top of the fence that enclosed the rink. There were no screens along the sides of the rink.

There was considerable conflict in the testimony as to the frequency with which the puck would be driven out of the rink during the progress of a game. The plaintiff had been attending hockey games for three or four years. He did not go to every game. He had gone to hockey games in 1936 and once in a great while prior to 1936. He was familiar with the layout of the rink and the seats and with the nature of the game. He had seen the puck leave the rink and go into seats over the end zones on two occasions but he had never seen the puck go into the audience over the sides of the rink where there were no screens. One of his companions, who had seldom missed a game since 1926, testified that although he had seen the puck go over the end of the rink many times he had seen it go over the sides of the rink only once or twice and on those occasions it did not go into the promenade but landed in the first or second row of seats. His other companion, who had attended games since 1932, testified that he had seen the puck go over the side of the rink a couple of times but he had never seen it go as far as the promenade. He did not know that it was liable to go into the promenade. A news reporter who had attended about two hundred fifty games testified that a puck would fly into the audience on an average of three or four times during each game; that sixty or seventy

per cent of the pucks that left the rink would land in the first or second row of seats next to the rink; that he had seen them go into the promenade and even over the promenade into the box seats; that as many went over the sides as went over the ends of the rink; that a puck going over the sides would not have as much velocity as one going over the ends. The defendant's office manager had seen pucks go over the sides of the rink as well as over the ends. The jury could accept the testimony of the plaintiff and his two companions that they had never seen a puck come from the rink and go into the promenade, and could find that they did not know that pucks had landed in the promenade. The jury could also find from the testimony that the defendant knew or ought to have known that during the progress of the game there was at least a reasonable probability that a puck might be driven into the promenade or perhaps beyond it.

One maintaining a place of amusement who has invited the public to attend upon the payment of an admission fee is bound to exercise reasonable care to keep the premises in a reasonably safe condition for their use, and to warn them against any dangers which he knows or ought to know they might encounter while upon the premises and which they reasonably could not be expected to know. *Tovey* v. *G. E. Lothrop Theatres Co.* 288 Mass. 346. *Kushner* v. *McGinnis,* 289 Mass. 326. *Brennan* v. *Ocean View Amusement Co.* 289 Mass. 587. *Stager* v. *G. E. Lothrop Theatres Co.* 291 Mass. 464. *O'Brien* v. *Freeman,* 299 Mass. 20. *Correira* v. *Atlantic Amusement Co. Inc.* 302 Mass. 81. *Keenan* v. *E. M. Loew's, Inc.* 302 Mass. 309. *Camp* v. *Rex Inc.* 304 Mass. 484. But no warning is required to be given to one who already has become apprized of the danger or where the situation is so obvious that a person of ordinary intelligence would readily sense the likelihood of impending harm and would take active measures to avert it. *Mellor* v. *Merchants' Manuf. Co.* 150 Mass. 362. *Hunnewell* v. *Haskell,* 174 Mass. 557. *Frost* v. *Josselyn,* 180 Mass. 389. *Sullivan* v. *Ridgway Construction Co.* 236 Mass. 75. *Curley* v. *Mahan,* 288 Mass. 369. *McGuire* v. *Valley Arena*

*Inc.* 299 Mass. 351. *Rynn* v. *Fox-New England Theatres, Inc.* 299 Mass. 258. *Bannister* v. *Berkshire Street Railway,* 301 Mass. 598.

The plaintiff could to some extent rely upon the performance by the defendant of its duty to use reasonable care to keep the premises in a reasonably safe condition for the use of those who attended the games. Whether from his previous knowledge he acted reasonably in using the promenade in going to the rest room at the time he did, or whether he should have used some other way, or whether his illness compelled him to leave his seat immediately, or whether he could or should have waited until there was an interruption in the game, or whether he knew or ought to have known that in using the promenade he was unnecessarily subjecting himself to an unreasonable risk, were all questions of fact. The jury were not required to find that he voluntarily assumed the risk of a known or obvious danger or that, in all the circumstances, his presence upon the promenade constituted contributory negligence. His knowledge as to the likelihood of a puck being driven to the promenade did not rest upon as extensive a basis as that of the defendant. The defendant possessed knowledge accruing from the total of all the games. Upon the evidence, a jury might properly find that the puck had gone into the promenade with sufficient frequency to indicate to the defendant that, unless additional safeguards were employed or a warning given, it was reasonably probable that injury might result to a patron who, trusting to appearances, could properly infer that the two fences furnished adequate protection and that the absence of a screen on the side of the rink tended to show that it was unnecessary. We think the issues of contributory negligence, voluntary assumption of the risk by the plaintiff, and the negligence of the defendant were properly submitted to the jury. *Shanney* v. *Boston Madison Square Garden Corp.* 296 Mass. 168. *Thurman* v. *Ice Palace,* 36 Cal. App. (2d) 364. *James* v. *R. I. Auditorium, Inc.* 60 R. I. 405. *Olds* v. *St. Louis National Baseball Club,* 232 Mo. App. 897.

*Exceptions overruled.*