[Civ. No. 3769. Fourth Dist. Apr. 26, 1949.]

MARVEL SHURMAN, Respondent, v. FRESNO ICE RINK INC. (a Corporation), Appellant.

Wild, Carlson & Reeve and Robert M. Barnard for Appellant.

L. Kenneth Say for Respondent.

GRIFFIN, J.—This is an action for damages. Defendant corporation operates the "Ice Arena" in Fresno. It promotes and controls ice hockey games between a team representing defendant corporation and other teams playing in the Pacific Coast Hockey League.

On the night of October 28, 1947, such a game was being played in the arena. Plaintiff and her husband attended it for the first time and they knew nothing about the equipment used by the players nor the method of playing the game. Plaintiff's husband asked for "the best seats in the house" and he purchased the highest-priced tickets. They were seated in seats assigned to them in the front row immediately adjacent to the iced surface which was surrounded by a wooden wall about 40 inches high. A protective wire screen was installed around the top of the 40-inch railing in front of certain numbered seats and at each end of the rink surrounding the "Goal Net." This section was about three-fourths occupied that night. Plaintiff was ushered to a seat located several seats south of and away from the end seats protected by this wire netting. Plaintiff testified that the seats were so close together she would have been unable to move quickly to dodge a "football" if she saw one coming. A few minutes after the first intermission of the ice hockey game, which was conducted by defendant, plaintiff was struck by a puck (a circular piece of hard rubber about 3½ inches in diameter and weighing about 4 ounces). This puck is left in ice until the play, for the purpose of hardening it. During the play

it was hit with a hockey stick in the hands of one of the players. He drove it through the air, over the railing and it struck plaintiff on her chin. She was taken to the hospital where she remained for eight or ten days. Twenty-five or thirty stitches were taken in her chin. Her front teeth were loosened. Hospital, doctor and nursing bills amounted to $572.10. The medical testimony showed that one hour and 35 minutes were consumed in repairing the wound by plastic operation; that she suffered a great deal of pain; that she was attended at her home for about one week and after that she was attended at the doctor's office until December 5th; that at the time of trial she had a scar on her chin and there was a slight depression of the lip which was permanent in character. The scar was "pulled." She complained of pain in articulation of the jaw and of headaches due to the blow. Treatments were given to the scar tissue. Plaintiff testified that at the time of trial, when she chewed, her jawbone slipped out of the socket and she was unable to tell whether or not she would always be thus troubled.

There is very little, if any, dispute as to these facts. However, defendant claims and showed evidence of the fact that about 22 signs (15" x 24") were posted in and about the building, reading: "Warning, Danger from Flying Pucks ... Patrons Assume all Risk of Injury from Flying Pucks," and *one* read: "Notice to Patrons ... Protected Screen Seats Available for Requesting Same." There was testimony that these signs were plainly visible. There was also evidence that a loud speaker system was installed within the arena and that defendant caused at least two warnings to be broadcast concerning the danger from pucks prior to the time Mrs. Shurman was injured.

Plaintiff and her husband testified that when they entered the arena the hallway and the place were crowded and there was considerable noise; that they did not see the signs nor hear any such announcements.

Upon this evidence the jury returned a verdict in favor of plaintiff for $800. Plaintiff moved for a new trial on the issue of damages only which was granted on grounds of insufficiency of the evidence to justify the verdict in that the amount was inadequate, and ordered that a new trial be had on that issue *alone*. Defendant's motion for a new trial on all issues was denied. Defendant appeals from the original judgment, from the order granting plaintiff's motion for a new trial, and from the order denying its motion for a new trial.

Based upon these facts it is defendant's position that there was no sufficient evidence of its negligence and therefore its motion for a nonsuit, directed verdict and motion for judgment notwithstanding the verdict should have been granted, citing such cases as *Shanney* v. *Boston Madison Square Garden Corp.*, 296 Mass. 168 [5 N.E.2d 1]; *Tite* v. *Omaha Coliseum Corp.*, 144 Neb. 22 [12 N.W.2d 90, 149 A.L.R. 1164]; *Lemoine* v. *Springfield Hockey Assn.*, 307 Mass. 102 [29 N.E.2d 716]; *James* v. *Rhode Island Auditorium*, 60 R. I. 405 [199 A. 293]; *Hammel* v. *Madison Square Garden Corp.*, 156 Misc. 311 [279 N.Y.S. 815]; and *Thurman* v. *Ice Palace*, 36 Cal.App.2d 364 [97 P.2d 999], all based on the claim of assumption of risk. However, the court there held that there was no assumption of risk as a matter of law.

In *Ingersoll* v. *Onondaga Hockey Club*, 245 App.Div. 137 [281 N.Y.S. 505], it is said:

"The risk of being hit by a baseball or by a puck at a hockey game is a risk incidental to the entertainment and is assumed by the spectators. Any other rule of law would place an unreasonable burden upon the operator of a ball park or hockey rink."

█ *In Thurman* v. *Ice Palace, supra* (hearing denied by the Supreme Court), the court rejected this rule announced in the Ingersoll case and definitely held that a spectator at an ice hockey game, who voluntarily selects a seat, which is not protected by a screen, on the edge of the rink, does not, as a matter of law, assume the risk of being struck by a puck used in the game, but where such spectator has never visited the rink nor seen such a game before, it is a question of fact to be determined by the jury from all the evidence whether the defendant was negligent in not providing either notices warning patrons of danger from flying pucks, or screens to protect the spectators, in case a puck should be driven above the railing surrounding the rink. Under these circumstances it was held that it was error to direct a verdict in favor of the defendant.

Defendant here points out that in none of the cited cases were any warnings given either by posting of signs or by the making of announcements over loud speakers or by any other means. It is therefore argued that even under the Thurman case, inasmuch as warnings were given by signs as well as by loud speaker, the duty imposed by law upon defendant, if any, had been more than fulfilled, and therefore there was no negligence upon which the verdict could have been based,

citing Restatement of the Law of Torts, sections 340, 342 and 343; *Crane* v. *Smith*, 23 Cal.2d 288 [144 P.2d 356]; *Newman* v. *Fox West Coast Theatres*, 86 Cal.App.2d 428 [194 P.2d 706].

In this connection it is also argued that the Thurman decision was in 1939, and since that time over 100,000 persons have seen ice hockey games and should be familiar with the method of playing it and should assume the risk, as is ordinarily done by occupants of baseball bleachers. (*Blackhall* v. *Capitol District Baseball Assn.*, 154 Misc. 640 [278 N.Y.S. 649].)

A mere recitation of plaintiff's injuries suffered, when considered in connection with the amount of special damages admitted, clearly indicates that the trial court was justified in granting a new trial on the grounds that the amount allowed by the jury was inadequate. (*Clippinger* v. *Reiss*, 17 Cal.App. 2d 604 [62 P.2d 418].)

In connection with defendant's lack of negligent operation of the arena it offered to prove that the Fresno arena was constructed in substantially the same manner as other rinks in reference to walls, screening and seating, and that other rinks did not take the precautions taken by this one in maintaining the signs above indicated, or in announcing the danger over the public address system. The trial judge sustained objections to this proffered testimony and ordered the jury to disregard the question. Plaintiff's counsel now concedes that this ruling was erroneous. (*Thurman* v. *Clune*, 51 Cal.App.2d 505 [125 P.2d 59].) This case definitely holds that the practice in other places relative to the safeguarding of ice hockey rinks and the opinion of experts relative to the proper safeguards to be taken in the construction of ice hockey rinks is evidence which is admissible and is entitled to consideration with other evidence on the query of whether defendant in a particular instance has properly safeguarded the ice hockey rink in question. While this evidence does not conclusively fix the standard of care of the operator, it is merely evidence which the jury may consider in determining whether the operator has exercised due care. (*Tite* v. *Omaha Coliseum Corp.*, *supra*; *James* v. *Rhode Island Auditorium*, *supra*.)

In some states it has been held, pertaining to baseball games, that where a spectator is given a choice between seats which are protected by a screen and those which are not, and he selects or accepts an unprotected seat, irrespective of

whether seats behind the screen are available, he thereby becomes guilty of contributory negligence or assumes the risk of the reasonable hazards inherent in and incident to the game, and it has been held that a spectator at a hockey game, under similar circumstances, as a matter of law, assumes the risk of being injured by a puck driven into the stands. (149 A.L.R. p. 1177, div. III.)

As has been noted, *Thurman* v. *Ice Palace, supra,* has rejected this latter holding and the general question was discussed by this court in *Ratcliff* v. *San Diego Baseball Club,* 27 Cal.App.2d 733 [81 P.2d 625], and it was there held (quoting from the syllabus):

"The exercise of ordinary care for the protection of patrons of baseball games requires that they should be protected from flying bats, at least in the area where the greatest danger exists and where such an occurrence is reasonably to be expected"; and that "While those in charge of professional baseball games are not insurers of their patrons, they are required to exercise ordinary care to protect those patrons from injuries from batted or thrown balls, but they are not required to screen all seats and they have met this burden when they have provided a protected area sufficiently large to accommodate as many as may be reasonably expected to call for such protection; and one who voluntarily occupies a seat outside the area thus protected assumes the natural and well known risk of being struck by thrown or batted balls."

In 149 American Law Reports, page 1175, it is said that the care required of the proprietor or operator of a place of amusement is that degree of care that would be expected of an ordinarily careful and prudent person in his position, and his duty is fulfilled when he makes the place as little dangerous as such a place can reasonably be made, having regard to the contrivances necessarily used in conducting such a place; that he is not, however, an insurer of their safety against all damages incident to the exhibition, but is required only to use the care and protection of an ordinarily prudent person to protect the spectators against danger and is not required to anticipate the improbable.

*Ingersoll* v. *Onondaga Hockey Club, supra,* relied upon by defendant, was decided by a divided court, and the appellate courts of this state have rejected the majority holding therein that a guest, at an ice hockey game, occupies the same status as a spectator at a ball game. The dissenting opinion points

out that where the guest was unfamiliar with the game and the seating arrangements and he asked for "good tickets" and he was conducted to seats by the usher at a place other than behind the screen, and was subsequently struck by a puck, it was said the question whether defendants had fulfilled their duty of exercising reasonable care, under all the circumstances, should have been left to the jury to determine. It was likewise said that the practice of other rinks as to precautions taken to guard against such injuries, is entitled to be considered by the jury but is not conclusive; that otherwise, those promoting such forms of amusement could create a rule of law for their own exemptions, citing cases. It appears to us that this rule should be applied to the instant case as the facts are quite similar except that here there were signs posted and announcements made of the danger of the flying pucks.

■ There is also evidence that plaintiff asked for the "best seats." The same price as would be exacted for seats behind the screen was paid. Whether the failure to continue the screen to cover these seats was a *proper* safeguard to be taken, under the circumstances, appears to be a factual question and not one of law. (*Ratcliff* v. *San Diego Baseball Club, supra.*) It does not appear, as a matter of law, that this is a case where the plaintiff, as an invitee, was fully informed and had knowledge of the attendant dangers of the game and notwithstanding that knowledge chose to occupy another or less costly seat, which might have been sufficient to bring her under the rule of assumed risk, as was held in *Elliott & Elliott* v. *Amphitheatre, Ltd.*, [1934, Manitoba] 3 Western Weekly Reports 225, 149 A.L.R. 1175, where plaintiff *selected his own seat* away from the protecting screen, where there was ample space behind the screened ends, and where plaintiff himself was a hockey player and had full knowledge of the dangers incident to the game and of the construction of the rink and the protection afforded spectators, a recovery was denied. Plaintiff in the instant case testified she did not select the seats away from the screened portion but was assigned these seats by the management; that she did not know of the dangers incident to their location or of the game. ■ The mere posting of signs or making of announcements of the dangerous condition, in and of itself, does not necessarily relieve defendant of its negligence, when the danger was apparent to it, and of which it had full knowledge. Otherwise, defendant could have well disposed of the wire netting at each end of the rink, where the greater danger lies, and rely upon the posted signs to

relieve it of all liability. Whether posted signs were sufficient or whether *other* protective measures were necessary under the circumstances, was likewise a factual question for the jury. Knowing the greater danger attached to the occupants of these end seats it did take precautions to guard against such known danger by installing netting to avoid injury to the occupants thereof, as well as posting signs and making announcements as to the danger. Whether, with this knowledge defendant should have, in the exercise of reasonable care, continued the netting further to the south to cover the same priced seats to which plaintiff was assigned was a factual question.

Since defendant was erroneously precluded by the trial court from showing the practice in other places relative to the safeguarding of ice hockey rinks we must conclude, on such a close question, that defendant was prejudiced thereby and the defendant's motion for a new trial should have been granted. This question, as well as the question of damages, should be retried. A limited new trial should not be granted, where substantial justice requires that a new trial, if granted at all, should cover all of the issues. (*Keogh* v. *Maulding*, 52 Cal.App.2d 17 [125 P.2d 858].)

Finally, it cannot be held, as a matter of law, that the general public has, at this particular date, become so familiar with the hazards of this sport and of the actual appreciation of the seriousness of the risk as to bring them within the "common knowledge" rule and under the doctrine of assumption of risk. (*Thurman* v. *Ice Palace, supra*; 13 So.Cal.L.Rev. 374.)

No appeal lies from an order denying a new trial. The attempted appeal therefrom is dismissed. (*Chichester* v. *Seymour*, 28 Cal.App.2d 696 [83 P.2d 301].) The order granting a new trial on the question of damages *only* should have been made *without limitation*. As thus modified, the order is affirmed. Judgment is reversed and a new trial ordered on all issues.

Mussell, J., concurred.

Barnard, P. J., being disqualified, did not participate herein.