**ULINE ICE, Inc., v. SULLIVAN et al.**

No. 10586.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 13, 1950.

Decided Dec. 21, 1950.

Mr. Paul J. Sedgwick, Washington, D. C., for appellant.

Mr. Howard Boyd, Washington, D. C., with whom Mr. Paul R. Connolly, Washington, D. C., was on the brief, for appellee.

Before PROCTOR, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This appeal raises the question of the liability or non-liability of the proprietor of a sports arena to a patron-spectator injured during the course of an ice hockey game.

Mr. and Mrs. Sullivan were asked to join a party of friends who planned to attend a professional ice hockey game on the evening of March 19, 1946, at the defendant's arena. One of the party, who had been a frequent spectator at ice hockey games, purchased the tickets, selecting seats in one of the more expensive sections of the arena. Mr. Sullivan reimbursed him for two of the tickets, and the group went to the arena together. The game had already started. They were conducted to their seats, which were in the front row, on the sideline near the end zone, with an unobstructed view of the play near the goal. The seats directly behind the goal line, at the end of the playing area, were screened by a wire mesh. The seats occupied by the Sullivans and their party were the first group of seats in the unscreened open-view area adjacent to the screened section. It was the first time that Mr. and Mrs. Sullivan had seen a game of ice hockey. They are natives of Tennessee, where the sport is seldom played, and had recently moved to Washington.

During the course of the game—apparently about halfway through—the hockey puck came flying up and out of the playing area, and struck Mrs. Sullivan in the face. The lenses of her spectacles were crushed, pieces of glass being driven into her eyes. She was taken to a hospital for treatment. About 98 per cent of the vision of her right eye has been lost. Suit was brought by her and her husband against the defendant company, the husband seeking damages for medical expenses and loss of consortium. The verdict and judgment awarded $17,000 in damages to Mrs. Sullivan, and $3,000 to Mr. Sullivan. The defendant company appeals.

Appellant alleges that it was not negligent, and that in any event Mrs. Sullivan assumed the risk of injury. It assigns as error the denial by the trial court of appellant's motion for a directed verdict, the granting of certain instructions requested by appellees, the denial of certain instructions requested by appellant, and the charge in its entirety.

First, as to the question whether appellant was negligent. It is not disputed that during a typical game the hockey puck leaves the playing area several times, and that it may fly into the seats in the side area as well as into the screens at the end areas, although the latter is the more usual. There was testimony that, despite this possible danger to those sitting at the sides, in all arenas in the country a portion of the side area is not screened; that approximately 60 per cent of the arenas have the same amount of screening as the Uline Arena, or less; and that the remaining arenas provide a larger screened area than does appellant (protecting seats comparable to those occupied by the Sullivans). Finally, there was testimony that no arena, by signs, or otherwise, warns patrons that by sitting in unscreened areas they are in possible danger of being hit by the puck.

Appellant argues that because it applied what it considered the customary amount of protection, it could not, as a

matter of law, be negligent; that it was entitled to a directed verdict, or at least to a charge that if it provided the customary protection, it had exercised due care. The trial court, on the other hand, considered that what was customary and usual was merely persuasive as to what constituted due care, and that the matter was one for the jury.[1] We think the trial court was correct. First, in view of the testimony that in 40 per cent of the arenas there was a greater screened area, it is questionable that appellant has established that the protection it provided was the customary amount. But apart from that, what is customary may very well be improvident. It is true that the exhibitor of a sports event is not an absolute insurer of the safety of the patron. But the mere fact that exhibitors generally provide a certain measure of protection to spectators does not preclude the possibility that reasonable men would have provided a greater measure. "What usually is done may be

evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."[2] "* * * otherwise those promoting such forms of amusement could create a rule of law for their own exemption."[3] Appellant argues, however, that additional screening was not feasible, because the spectators do not desire to have their vision blocked by wiring and the requisite supports. Appellant further contends that to post notices warning spectators of the danger of sitting in unscreened areas would be superfluous because the danger is common knowledge, or at least is obvious to anyone who sees the screening, and observes the game for a few moments. But the questions whether a reasonably prudent operator would have provided additional screening, despite the usual practice and the desires of the customers, and whether a reasonably prudent operator would have provided notices for the benefit of the unwary or uninformed,[4]

1. In response to appellees' request, the trial court charged the jury, in part:

"If you find that in the discharge of defendant's duty to use ordinary care to protect its patrons from known dangers, that defendant should have erected a wire netting or other type of barrier than that provided between the playing field and the stands where plaintiff was seated, or that the defendant should have warned the spectators of the dangers with signs or similar devices, and that such area [sic] was the proximate cause of the plaintiff's injuries, the defendant would be guilty of negligence.

* * * * * * *

"Evidence of similar construction of other rinks is not conclusive that defendant's rink was safely constructed. Whether it was or not is a question for the jury to decide. Although you may consider the evidence of similar construction of other rinks in deciding whether defendant was guilty of negligence, if you should find from all the evidence that defendant had knowledge of the danger to patrons from flying pucks and that a reasonably prudent rink operator chargeable as was this defendant with the duty of exercising adequate care to protect its patrons from danger would have provided additional safeguards, the defendant's failure to provide such safeguards would be negligence.

* * * * * * *

"In considering whether the defendant exercised reasonable care in failing to provide the plaintiff with protection from flying pucks you may consider the practice by other rink operators. Such a practice is persuasive, however, only in so far as it is widely accepted and it is to be considered in the light of the experience of the defendant and other operators." (Jt.App. 64–67.)

2. Texas & Pacific Ry. Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L. Ed. 905, quoted in Hellweg v. Chesapeake & Potomac Telephone Co., 71 App. D.C. 346, 348, 110 F.2d 546, 548.

3. Ingersoll v. Onondaga Hockey Club, 245 App.Div. 137, 281 N.Y.S. 505, 512 (dissenting opinion).

4. In a case not dissimilar to this the court, in reciting the evidence before it, said that defendant had shown "that about 22 signs (15" x 24") were posted in and about the building, reading: 'Warning, Danger from Flying Pucks * * * Patrons Assume all Risk of Injury from Flying Pucks', and one read: 'Notice to Patrons * * * Protected Screen Seats Available for Requesting Same'. * * * There was also evidence that a loud speaker system was installed within the arena and that defendant caused at least two warnings to be broadcast concerning the danger from pucks prior to the time Mrs. Shurman was injured."

were for the jury.[5] We think the instructions adequately presented these questions to the jury, and further, that the evidence supports the jury's finding that the appellant was negligent.

This brings us to the question of assumption of risk. There have been many decisions involving this question in cases where spectators were injured at sporting events, primarily in attending baseball games. In the baseball cases, with few exceptions, it generally has been held that, as a matter of law, the spectator assumes the risk of the normal hazards of watching such a game; and that, as a matter of law, the danger of being hit by a ball which flies into an unscreened area is a normal hazard, within the common knowledge possessed by reasonably prudent persons.[6] There are also several decisions in cases involving an injury, similar to that which occurred here, to spectators of hockey games. These decisions are conflicting. The courts of four states have held that the question of assumption of risk is one of fact for the jury, which must determine whether the game's dangers are common knowledge attributable to the plaintiff, and, if not, whether the particular spectator had knowledge of the hazards involved.[7] The courts of three states follow the rule established in the baseball cases.[8] Appellant contends that the latter rule is the one which should be

applied here, and that appellee, by selecting unscreened seats, assumed the risk of the injury she incurred.

The trial court determined that the jury must decide the question of assumption of risk. The jury was charged that if Mrs. Sullivan knew of the danger, "or in the exercise of reasonable care and prudence should have known of the danger * * * she acquiesced and assumed the risk of injury in occupying * * * [unscreened] seats to view the game." We think that this was a proper charge,[9] and that in view of the testimony the determination of the jury that the appellee did not assume the risk is amply supported by the evidence.

The exhibition of ice hockey, like the exhibition of baseball or any other sporting event, is a business. And ordinarily the exhibitor and not the spectator must bear the burdens and expenses to which the exhibition may give rise. The spectator is not a participant but a consumer, like the buyer of any other product. Usually, the onus is not on the spectator to know of all the dangers and to be aware of all the hazards, but on the exhibitor to provide all practicable protection and warn of all significant dangers. There may be, of course, situations where the danger is so patent or well known that, as a matter of

Shurman v. Fresno Ice Rink, 91 Cal.App. 2d 469, 205 P.2d 77, 78.

5. Thurman v. Ice Palace, 36 Cal.App.2d 364, 97 P.2d 999, 1000; see also Shurman v. Fresno Ice Rink, 91 Cal.App.2d 469, 205 P.2d 77; Shanney v. Boston Madison Square Garden Corp., 296 Mass. 168, 5 N. E.2d 1; Lemoine v. Springfield Hockey Association, Inc., 307 Mass. 102, 29 N.E. 2d 716; Tite v. Omaha Coliseum Corp., 144 Neb. 22, 12 N.W.2d 90, 97, 149 A.L. R. 1164; James v. Rhode Island Auditorium, Inc., 60 R.I. 405, 199 A. 293.

6. See cases collected in note, 142 A.L.R. 868.

7. California: Thurman v. Ice Palace, supra; Shurman v. Fresno Ice Rink, supra; Massachusetts: Shanney v. Boston Madison Square Garden Corp., supra: Lemoine v. Springfield Hockey Association, Inc., supra; Nebraska: Tite v. Omaha Coliseum Corp., supra, Rhode Island:

James v. Rhode Island Auditorium, Inc., supra.

8. Modec v. City of Eveleth, 224 Minn. 556, 29 N.W.2d 453; Hammel v. Madison Square Garden Corp., 156 Misc. 311, 279 N.Y.S. 815; Ingersoll v. Onondaga Hockey Club, 245 App.Div. 137, 281 N.Y.S. 505; Wolf v. Olympia Stadium, Inc., Nos. 247-609, 247-610 (Wayne County Circuit Court, Mich., 1949).

9. In Tite v. Omaha Coliseum Corp., supra, the court said: "The jury should have been informed in substance that a spectator assumes the risk of dangers incident to the playing of the game which she knew or which a reasonably prudent person under the circumstances should have known or foreseen." 12 N.W.2d at page 97.

As this court said in Weber v. Eaton, 82 U.S.App.D.C. 66, 67-68, 160 F.2d 577, 578-79: "* * * assumed risk * * * involves a mental state of willingness."

law, the spectator assumes the risk. The baseball cases are decided on such a premise, though we need not here determine whether we agree with those decisions.[10] We do not have such a case before us. Professional hockey is not now played in the District and the attempt at its establishment here was unsuccessful and short-lived. It was not shown to have achieved, like baseball, either a local or a nationwide acceptance. Under such circumstances, we believe that it is a jury question whether the dangers inherent in sitting in an unscreened, ring-side seat at a hockey match are common knowledge chargeable to the appellee.

Appellant further argues that, apart from common knowledge, the appellee here either was sufficiently well informed of the danger, or, after seeing the screens and the play for a short time, should have been aware of it, and that she thus assumed the risk. We do not agree. Here the appellee testified she did not know that the puck could leave the playing area, that she did not know that the zone where she was sitting was dangerous, and that this was her first time at a hockey game. "Primarily the game was played upon the playing surface of the ice and not in the air. * * * The flying off of the 'puck' into the vicinity where the plaintiff sat seems to have been an occasional event which took place often enough so that the jury might find that the defendant with its familiarity with the game and the place ought to have anticipated it, but that the possibility of danger from that source would not naturally occur to * * * a patron who had never seen it happen." [11]

We have considered appellant's other contentions, and find no reversible error. Accordingly, the judgment of the District Court is

Affirmed.

10. Neither appellant nor appellee has cited any decision of the courts of this jurisdiction on the subject and our own research has revealed none.

11. Shanney v. Boston Madison Square Garden Corp., supra, at 5 N.E.2d 2.