**PRINCEMONT CONSTRUCTION CORP.,**
Appellant

v.

**A. D. SMITH.**

**No. 22231.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 21, 1969.

Decided July 10, 1970.

Mr. John F. Cooney, Washington, D. C., for appellant.

Mr. Alfred M. Schwartz, Washington, D. C., for appellee.

Before BAZELON, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges.

PER CURIAM:

This is an appeal from a judgment of the District Court awarding appellee damages for personal injuries allegedly suffered in consequence of appellant's negligence. The injuries so compensated were sustained when an automobile operated by appellee collided with a construction barricade and a large road-building machine utilized by appellant in the course of roadwork performed on Suitland Parkway, in the District of Columbia. At a jury trial extending over four days, the judge denied appellant's motion for a directed verdict [1] and submitted the factual issues for the jury's determination. The jury returned a verdict for appellee in the sum of $91,-261.18 which, on remittitur by appellee, was reduced to $40,000.[2]

Appellant contends that the evidence did not establish negligence on its part, but instead disclosed appellee's contributory negligence as a matter of law,[3] and that the refusal to direct a verdict was accordingly error. It also urges that the verdict, even as lowered by the remittitur was grossly excessive [4] and, moreover, that an outbreak of rioting in the District on the day the jury deliberated precluded a dispassionate verdict on the evidence.[5] We separately examine each of these claims in the course of this opinion [6] and, finding no warrant for disturbing the District Court's award, we affirm its judgment.

About 5:00 a.m. on a December morning, appellee was driving westwardly on Suitland Parkway, accompanied by Lloyd Gary Avary, Jr., a friend. The Parkway is a paved 24-foot wide divided highway, with two lanes for travel in each direction. It was very foggy that morning; by Avary's description, "there was this fog all up and down the highway and in some instances there was pockets and we hit these pockets and we couldn't hardly see anything on that Parkway. * * * " Appellee kept his car in the left lane, he explained, in order, "in case anything stalled, that I would be able to pass it up because it was real foggy."

The collision occurred at a point where there was new construction altering the course the highway took. On the completion of that construction and the opening of the new section for travel, Suitland Parkway presented a slight bend

---

1. Fed.R.Civ.P. 50. The motion was made originally at the conclusion of appellee's case in chief, and was renewed at the close of all of the evidence.

2. After verdict, appellant filed a motion for a new trial, and the judge conditioned denial of the motion on appellee's remittitur of so much of the verdict as exceeded $40,000. Appellee acceded to the remittitur, and a new trial was formally denied. See 6A J. Moore Federal Practice ¶ 59.05 [3] (2d ed. 1965); Northern Pac. R. R. v. Herbert, 116 U.S. 642, 647, 6 S.Ct. 590, 29 L.Ed. 755 (1886).

3. Discussed in text *infra* following note 6.

4. Discussed in note 25, *infra.*

5. Discussed in note 27, *infra.*

6. References to the respective discussions are supplied in notes 3–5, *supra.*

to the right for westward traffic.[7] On the date of the accident—a Sunday, when no work was actually in progress—a westbound motorist approaching this section confronted three side-by-side barricades, each about five feet high and eight to twelve feet long, and, a few feet behind the barricades, a road roller—a piece of heavy roadbuilding equipment. As we have stated, appellee crashed through one of these barricades and into the road roller parked behind.

The location of the barricades and the road roller, and the steps taken to make their presence known to Parkway motorists, were critical as well as hotly contested issues at trial. Appellee charges that these objects had been placed across the westbound lanes to make for a detour channeling traffic in that direction away from the new construction.[8] There were no warning lights whatever, appellee continues, and the barricades were indistinct because their white color blended with the foggy atmosphere.[9] Appellant counters with the assertion that the barricades and the road roller were stationed to the left of and entirely off the Parkway thoroughfare in order to halt traffic onto the median

strip along an old road since abandoned.[10] Although the barricades were not artificially lighted, appellant says, they bore "Keep Right" markings and arrows, and white reflectorized stripes that automobile headlights readily activated. Appellant adds that the dangerousness of the collision site was foretold by signs posted ahead for the benefit of oncoming travelers.[11]

Like the claims themselves, the proofs adduced at trial were highly conflicting, not only on the main issues but on subsidiaries as well.[12] Our own close scrutiny of the record reveals that the jury could intelligently find substantial support in the evidence for each of the opposing theories. That being so, we have no call now to recount the numerous and variegated evidentiary details, for in our view they were peculiarly for the jury's consideration.[13]

The parties are agreed, as are we, that appellant was under a duty to exercise reasonable care in its roadworking operations, including the placement and maintenance of barricades, for the protection of motorists using the highway.[14] We share, too, the common view that appellee bore, for his own protection, a similar duty of ordinary care in

---

7. As will appear, the evidence was in conflict as to whether, on the date of the accident, this section had been finished and was open to the public, as appellant contended, or whether it was completed and opened four days later, as appellee contended. See notes 8, 10, *infra*.

8. By appellee's theory, all westbound traffic reaching this point on the Parkway was to detour to the right on what was ordinarily an exit ramp in order to bypass that section which, he argues, was still under construction.

9. Testimony on behalf of appellee tended to show a pocket of dense fog at the point of collision. Avary said that "[w]e were right in the barricade before one could see it," and appellee stated that he first saw the barricades when his vehicle was only about 15 feet away.

10. Thus appellant's theory disputes the detour, argues that the new section was finished and open for travel, and contends that the accident occurred simply because appellee drove straight ahead instead of following the bend to the right.

11. Evidence for appellant tended to show that four large signs, diamond-shaped with reflectorized yellow backgrounds, had been placed on the sides of the Parkway commencing about 500 feet east of the point of impact, two of which were marked "Slow" and the other two "Construction Ahead."

12. A typical example was the dispute as to whether, on the date of the accident, the new section was completed and open for travel, or whether the detour was in use.

13. It has long been settled that a jury finding supported by substantial evidence is binding upon the reviewing court. Kintz v. Lenken, 67 App.D.C. 116, 89 F.2d 860 (1937); American Ice Co. v. Moorehead, 62 App.D.C. 266, 267, 66 F.2d 792, 793 (1933); Prudential Ins. Co. v. Carlson, 126 F.2d 607, 608, 611 (10 Cir. 1942).

14. Rosier v. State, 50 So.2d 31, 35 (La. App.1951); Kuska v. Nichols Constr. Co., 154 Neb. 580, 48 N.W.2d 682, 687 (1951); Miller v. State, 231 App.Div.

**1220**

his driving.[15] In jury trials, determinations as to negligence, either primary or contributory, are exclusively for the jury where fair-minded people might differ as to the conclusion appropriate.[16] And in assessing a trial judge's action denying a motion for a directed verdict, we must accept the evidence in the light most favorable to the party who won the verdict.[17]

■ Here the verdict for appellee, underpinned by evidence prudent jurors could believe, resolved the conflict over the location of the barricades and the road roller. No citation of authority is required to demonstrate the proposition that the placement of barricades within a normally traveled area of a public highway without reasonable warning is a plain act of negligence. Appellant's contention that primary negligence on its part was insufficiently shown rests instead upon evidence tending to support the thesis that the markings and reflectorized stripes on the barricades, together with the advance warnings supplied by independent signs, constituted a full compliance with custom and current practice with reference to the protection of the traveling public. We have no way of knowing whether

the jury, on the evidence, considered it so, but even if it did the conclusion that appellant was not negligent was not compelled as a matter of law. Custom and practice may have evidentiary value on an issue of negligence,[18] but it cannot set the standard of conduct.[19] Despite conformance with long standing custom and prevailing practice, the jury is required to pass judgment on the questioned conduct in terms of the legal standard of reasonable care.[20] Here, we repeat, the verdict, on ample evidence, went against appellant, and that ends the matter insofar as the issue of primary negligence is concerned.

■ For somewhat similar reasons, we find unacceptable the argument that the evidence established appellee's contributory negligence as a matter of law. Appellee testified that his speed immediately before the collision was 20 to 25 miles per hour, and the heavy fog existent at the time is undisputed. While there was evidence suggesting a greater speed than appellee admitted,[21] it was for the jury to ascertain whether his pace was "reasonable and prudent under the conditions and having regard to the actual and potential hazards then

363, 247 N.Y.S. 399, 404–405 (1931); Larsen v. Johnson, 21 Utah 2d 92, 440 P.2d 886, 887 (1968).

15. Paxon v. Davis, 62 App.D.C. 146, 150, 65 F.2d 492, 496, cert. denied, 290 U.S. 643, 54 S.Ct. 61, 78 L.Ed. 558 (1933); Griffith v. Slaybaugh, 58 App.D.C. 237, 239, 29 F.2d 437, 439 (1929).

16. Aylor v. Intercounty Constr. Corp., 127 U.S.App.D.C. 151, 155, 381 F.2d 930, 934 (1967); McGettigan v. National Bank of Washington, 115 U.S.App.D.C. 384, 386, 320 F.2d 703, 705, cert. denied, 375 U.S. 943, 84 S.Ct. 348, 11 L.Ed.2d 273 (1963); Peigh v. Baltimore & O. R. R., 92 U.S. App.D.C. 198, 201–202, 204 F.2d 391, 393–394 (1953); Brooks Transp. Co. v. McCutcheon, 80 U.S.App.D.C. 406, 408, 154 F.2d 841, 843 (1946); McCoy v. Moore, 78 U.S.App.D.C. 346, 347, 140 F.2d 699, 700 (1944).

17. Aylor v. Intercounty Constr. Corp., *supra* note 16, 127 U.S.App.D.C. at 153, 381 F.2d at 932, and cases there cited.

18. Wabash Ry. Co. v. McDaniels, 107 U.S. 454, 460–461, 2 S.Ct. 932, 27 L.Ed. 605 (1883); Uline Ice, Inc. v. Sullivan, 88 U.S.App.D.C. 104, 106, 187 F.2d 82, 84 (1950); Hellweg v. Chesapeake & Potomac Tel. Co., 71 App.D.C. 346, 348, 110 F.2d 546, 548 (1940); Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 234 F.2d 253, 260 (2d Cir. 1956).

19. See the cases cited *supra* note 18.

20. See cases cited *supra* note 18. See also Washington Hosp. Center v. Butler, 127 U.S.App.D.C. 379, 387–388, 384 F.2d 331, 339–340 (1967); W. Prosser, Torts § 32 (3d ed. 1964).

21. Damage to appellee's automobile from the collision was almost $1,000, and there was testimony, albeit disputed, that the vehicle laid down a skidmark about 66 feet in length to the point of impact.

existing." [22] Nor can we say that as a matter of law appellee, to avoid a holding of contributory negligence, was required to stop his car and wait for the fog to lift. The condition indispensable to appellee's accident was the location of the barricades and the road roller, which the jury's verdict implicitly but clearly established as an act of negligence. And where, as here, "the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless he acts unreasonably." [23] Of course, the jury, taking into consideration the utility of appellee's trip and the details of its execution, was free to find on the evidence that he acted unreasonably in persisting in his journey.[24] But, like the situation as to appellant's primary negligence, the jury, under proper instructions from the court, negated contributory negligence by its verdict, and our view of the law leaves no room for upsetting it.[25]

**22.** "No person shall drive a vehicle on a street or highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the street or highway in compliance with legal requirements and the duty of all persons to use due care." D.C. Traffic and Motor Vehicle Regulations § 22(a) (1967). Violation of such a regulation may constitute negligence per se. Aylor v. Intercounty Constr. Corp., *supra* note 16, 127 U.S. App.D.C. at 154 n. 6, 381 F.2d at 933 n. 6 and cases there cited. Compare Ross v. Hartman, 178 U.S.App.D.C. 217, 218, 139 F.2d 14, 15, 158 A.L.R. 1370 (1943), cert. denied, 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944).

**23.** Restatement (Second) of Torts § 473 (1965). See also Lebovics v. Howie, 307 Mich. 326, 11 N.W.2d 906, 908 (1943); Birks v. East Side Transfer Co., 194 Or. 7, 241 P.2d 120, 133 (1952); Jorgensen v. Massart, 61 Wash.2d 491, 378 P.2d 941, 943 (1963); Patton v. City of Grafton, 116 W.Va. 311, 180 S.E. 267, 269, 270 (1935). Compare Kanelos v. Kettler, 132 U.S.App.D.C. 133, 137–138, 406 F.2d 951, 955–956 (1968).

**24.** See cases cited *supra* note 23. See also Restatement (Second) of Torts § 474 (1965); Indiana Utils. Co. v. Wareham, 66 Ind.App. 542, 118 N.E. 572, 576 (1918); Holland v. County of Allegan, 316 Mich. 134, 25 N.W.2d 140, 141 (1946).

**25.** A related contention is that the amount of the verdict, notwithstanding the remittitur, remains exhorbitant. Our review function upon a claim of excessive verdict, however, is exceedingly narrow.

Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481, 53 S.Ct. 252, 77 L.Ed. 439 (1933); Haycock v. Christie, 101 U.S.App.D.C. 409, 410, 249 F.2d 501, 502 (1955); Hulett v. Brinson, 97 U.S.App.D.C. 139, 142, 229 F.2d 22, 25 (1955), cert. denied, 350 U.S. 1014–1015, 76 S.Ct. 659, 100 L.Ed. 874 (1956); Coca Cola Bottling Works v. Hunter, 95 U.S.App.D.C. 83, 84, 219 F.2d 765, 766 (1955). It is even narrower after the trial judge has exhausted his discretion through a remittitur accepted by the victorious party. Cf. Yost v. Sauter, 136 U.S.App.D.C. 237, 238, 239, 420 F.2d 79, 80, 81 (1969); Atlantic Greyhound Corp. v. Frank, 108 U.S.App. D.C. 80, 81, 280 F.2d 628, 629 (1960). Compare Taylor v. Washington Terminal Co., 133 U.S.App.D.C. 110, 409 F.2d 145, cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969). Like the others before it, we measure the present claim by appellee's evidence in its most beneficial light. The accident aggravated a congenital but non-disabling condition in appellee's fifth lumbar spine, and the injury was both painful and incapacitating. A prognosis as to its permanence is difficult, but appellee was directed to wear a lumbrosacral support, which he might have to do for the rest of his life. Lifting heavy objects threatens reinflammation of his back, and he may never be able to again work as a construction laborer as he did before the accident. In fact, despite 40-odd treatments, appellee failed in several attempts at his old job, and has been able only to drive a taxicab part-time. His earnings are approximately $60 per week less than before the accident, and his life expectancy therefrom was 27 years. In these circumstances, we leave appellee's award where it is.

█ In sum, the matters of which appellant complains, save one,[26] resided chiefly within the jury's domain, an area into which we have but limited authority to intrude. The single claim that is the exception, we find upon investigation, is not sustained by the record.[27] The judgment appealed from is accordingly

Affirmed.

---

26. See note 27, *infra.*

27. We refer, of course, to the contention that unrest in the District on the day the jury deliberated affected the verdict. The facts of record do not bear this contention out. Presentation of the evidence was completed about mid-afternoon on April 4, 1968. That evening Dr. Martin Luther King, Jr., was assassinated. When court reconvened on the next morning, the trial judge delivered a brief eulogy, coupled with a reminder that "we are here to try this case in accordance with the law and under this evidence. * * *" Then followed the arguments of counsel and, after a five-minute recess, the trial judge's charge, whereupon the jury retired at 12:30 p. m., to deliberate. At approximately 4:30 p. m., just as the trial judge was discussing with counsel whether he should then excuse the jurors, they returned to render their verdict. Save for the brief morning recess, the jury did not separate from the time court opened until after the verdict came in.

There is little in the record to suggest that the jury, thus insulated from the outside, was even aware of the rioting that flared up on April 5. Much less does the record suggest any adverse effect upon the jury, and appellant's allusion to other concomitant events leaves us unpersuaded. Compare Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). Moreover, there was no motion for a mistrial on the theory that the jury might be swayed by the commotion in the community, see Fed.R.Civ.P. 46; even though appellant's counsel became aware prior to verdict of an alleged inquiry of a court attendant by a juror indicating that juror's awareness of outside events, he did not bring it to the attention of the trial judge. "A litigant may not, speculating on a verdict without making objection, keep silent while matters are transpiring in the trial court and then put the trial judge in error by assigning error in the appellate court with respect of them, except, of course, in a case * * * of plainly prejudicial error." Ford v. United Gas Corp., 254 F.2d 817, 818 (5th Cir.), cert. denied, 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958). Compare Parker v. United States, No. 22,159 (D.C.Cir. Apr. 18, 1969) (unreported).