*Northern District*
A.D. No. 6003
DAVID F. TIERNEY, PPA ET ALI
v.
NORTH SHORE SPORTS CENTER, INC., ET AL
THEATRES AND SHOWS. HOCKEY.

*Present*: * Eno, J., Connolly & Parker, JJ.

Case tried to *Landergan, J.* in the District Court of Southern Essex (Lynn). No. R335 of 1962.

*Eno, J.* By this action of tort, remanded from the Superior Court, the minor plaintiffs seek to recover damages for alleged injuries sustained while attending a hockey game on the premises under the control of the defendant North Shore Sports Center, Inc., hereinafter referred to as the defendant. Their fathers are also seeking consequential damages for these injuries.

There was a finding for the defendant owner of the premises, and so, therefore, only the action against the above-named defendant is before us.

The defendant's answer contained a general denial, and the further defenses of contributory negligence and assumption of risk.

The trial judge found the following facts: "There was evidence that the plaintiff, David F. Tierney, p.p.a., Francis Tierney, the father of David F. Tierney, p.p.a., and Paul J. Myron, p.p.a., together with two friends, Walter Crotty and Stephen Powers, each purchased a ticket for a consideration from the defendant, North Shore Sports

* This case was heard by Eno, Connolly and Parker, JJ. The opinion was written by Eno, J. Connolly and Parker, JJ. concurred. Before the Decision and Order was signed by the members of the Court, Eno, J. died, so the Decision and Order is signed only by Connolly and Parker, JJ.

Center, Inc., for the purpose of watching a hockey game between Winchester High School and Daniel O'Connell High School of Montreal, Canada, conducted under the care and supervision of the defendant North Shore Sports Center, Inc., at the Sports Center on Boston Street in Lynn, which was also under the control of North Shore Sports Center, Inc. They all entered from the Boston Street entrance and went to the right to seats down front and all sat together along the same bench, David F. Tierney, p.p.a., 17 years of age, at one end next to scorer's table and Paul J. Myron, p.p.a., 18 years of age, Crotty, Powers, and Tierney's father. They all testified except Crotty. No. 12, of the plaintiff David F. Tierney's interrogatories to the defendant North Shore Sports Center, Inc., and answer, were included in the evidence as follows: *Question* 12: 'Please describe in detail and as fully as possible the screening or fencing in the area of the blue line near the penalty box and scorer's box at the skating rink at the Sports Center on Boston Street, Lynn, Massachusetts, on or about February 20, 1960.'

*Answer*: 'There is screening at both blue lines but no screening at the front of the penalty box and none in front of the players' benches. There are players' benches on each side, across from each other and penalty box only on the one side./The penalty box and scorer's box is the same area and loca-

tion. There was no screening in front of two seats to the right of the penalty box—about 24 inches or 2 feet.'

They were all behind the wire with the exception of plaintiff David F. Tierney, p.p.a., and Paul J. Myron, p.p.a., who were seated in said two seats in front where there was no screen to the right of the penalty or scorer's box. There was evidence that they arrived ten or fifteen minutes before the game. There was evidence that hockey players checked each other three or four feet from the fence and one of them flew up in the air, (did a cartwheel), his hip on top of the fence and his feet, with skates on, over the fence into the stand, his skates first hit David F. Tierney, p.p.a., over the left eyebrow lacerating it, which required anti-toxin and nine sutures to close it. Paul J. Myron, p.p.a., was hit on the left side of the neck back of the ear, lacerating it with division s.c.m. head, was treated with peni-cillin six million units, tetanus toxoid (1) six buried suture ligatures (2) ten skin sutures vertical mattress (3) pressure dress-ing, at Lynn Hospital, where they both had been taken bleeding profusely. Thereafter, both boys received medical treatment and both boys' lacerations are still disfiguring scars.

There was conflicting evidence by one witness saying he could not say there were plenty of seats; they chose the seats them-selves; couldn't say there were not empty

seats for five, but not together, and they wanted a brace of five seats together; that it was crowded at the arena and filled except perhaps two seats together.. There was evidence by David F. Tierney, p.p.a., that both were sitting down normally and not leaning over the board or fence; that there was no wire in front of them. David F. Tierney, p.p.a., testified that the check or body contact of players was three or four feet from the fence, six or seven feet from where he was sitting and that he was sitting two or three feet from the fence or board; these players were going fast, eight or nine feet from the box or place where he was sitting, before the body check; that he had played on the Winchester team for four years; that he never saw anyone go over the board; players usually were confined to the ice. Paul J. Myron, p.p.a., testified he had seen quite a few games, ten or fifteen games, Winchester games; never saw anything like this occur. Stephen Powers testified that they got to the Sports Center about 2:50 P.M.; that the place was crowded, probably two seats together. He testified he saw players checked previously but never saw an incident like this happen before where player went into audience, and he had played in practically all hockey rinks around New England; only the wire protected the audience; that in every place there was wire up over the fence to protect the audience, except the bench and time

keeper's and penalty box; (if a wire was there no skater would have been able to get in beyond the screen).

There was evidence that Harry C. Batchelder, with his wife, was the owner of the property and that he leased the land to the North Shore Sports Center, Inc.; that he had no control of the operation of the Center and was in no way responsible to the plaintiffs.

Therefore, I find for the defendant Harry C. Batchelder on Counts 5, 6, 7 and 8.

I find that the defendant North Shore Skating Center, Inc. operates and controls the Sports Arena in Lynn where hockey games are conducted. On the afternoon of February 20, 1960 the plaintiff David F. Tierney, p.p.a., 17 years of age, and Paul J. Myron p.p.a., 18 years of age, Walter Crotty, Stephen Powers and Francis Tierney, father of David F. Tierney, p.p.a., all went to the Sports Center to witness a hockey game; that they purchased tickets for a consideration from the defendant corporation; that they all sat together in seats down front. I find further that there is screening at both blue lines, but no screening at the front of the penalty box and none in front of the players' benches; there are players' benches on each side, across from each other and penalty box only on the one side; the penalty box and scorer's box is in the same area and location. There was no

screening in front of the two seats to the right of the scorer's box where the plaintiffs David F. Tierney, p.p.a., and Paul J. Myron, p.p.a., were sitting, a distance of about 24 inches or 2 feet; that about two or three minutes after the game started I find hockey players checked each other three or four feet from the fence and one of them did a cartwheel, flew up in the air, his hips on top of the fence and his feet, with skates on, went over the fence and entered the stands where there was no wire; the player's skates or skate first hit David F. Tierney, p.p.a., over the left eyebrow lacerating it and then hit Paul J. Myron, p.p.a., on the left side of the neck back of the ear; injuries of both required treatment at the Lynn Hospital and medical attention and both David F. Tierney, p.p.a., and Paul J. Myron, p.p.a., have scars that are still disfiguring.

I find that the plaintiffs, David F. Tierney, p.p.a., and Paul J. Myron, p.p.a., never saw a player involuntarily enter the stands in such a manner as stated above in finding. The defendant failed to warn of the danger.

I find the defendant negligent and the plaintiffs were in the exercise of due care and that the plaintiffs did not assume the risk of injury."

The defendant claims to be aggrieved by the denial of its requests for rulings:

"1. The evidence does not warrant a find-

ing that the defendant, its agents or servants were negligent.

2. The evidence does not warrant a finding other than that the negligence of the plaintiffs contributed in whole or in part to cause the alleged injuries and damage.

3. The evidence does not warrant a finding that the negligence of the defendant proximately caused the alleged injuries and damage.

4. As a matter of law the defendant breached no legal duty owed by it to the plaintiffs.

5. As a matter of law the plaintiffs assumed the risk of the alleged injuries."

and by the allowance of all the plaintiffs' requests for rulings:

"1. The plaintiffs were business invitees of the defendant, North Shore Sports Center, Inc.

2. The defendant, Sport Center, as a matter of law was in control of the premises where the plaintiffs were injured.

3. The defendant, Sport Center, was bound to exercise reasonable care to keep the premises in a reasonably safe condition for their use.

4. The defendant, Sport Center, had a duty to warn the plaintiffs of hidden dangers or defects.

5. The plaintiffs are entitled to recover

upon proving that the injuries were caused by the defendant, Sport Center's failure to warn them and that the defect was one of which the defendant knew or which he could have discovered by exercising reasonable care.

6. The defendant, Sports Center, was negligent as a matter of law.

7. The defendant, Sports Center, was in breach of duties owed to the plaintiffs, as a matter of law.

8. The evidence warrants a finding that the defendant, Sports Center, was negligent.

9. The evidence does not warrant a finding other than that the negligence of the defendant, Sport Center, was the proximate cause of the plaintiffs' injuries.

10. The evidence does not warrant a finding that the plaintiffs were negligent.

11. As a matter of law there must be a finding for the plaintiffs, as to the defendant, Sport Center."

The trial judge found for the plaintiffs.

The report states that it contains all the evidence material to the questions reported.

The issues before us, as claimed by the defendant are the following:

"1. Did the evidence warrant a finding that the defendant was negligent?

2. Did the plaintiffs assume the risk by selecting the unprotected seats?"

We agree with the defendant that the plaintiffs had the burden of proving the negligence of the defendant.

"(T)he duty owed to invitees by one who operates a place of amusement has been set forth in several decisions" *Aldea v. Norwood Arena, Inc.,* 332 Mass. 267, 270-271, and cases cited, and "(T)he rule deducible from these decisions is that the proprietor of a place of amusement owes to his patrons the duty to use due care to see that his premises are reasonably safe for the intended use or to warn them of dangers which are not obvious."

In the instant case there was a chain link fence to protect the patrons, except for that part occupied by the plaintiffs. By leaving a portion of the premises unprotected would, in our opinion, raise a serious question of the defendant's negligence. We think that the defendant should have anticipated the danger and either have warned its patrons thereof or bar them from sitting in that section of the premises. The trial justice has found as a fact that the defendant was negligent. We cannot say that that was error. *Shaney v. Boston Madison Square Garden Corp.,* 296 Mass. 168; *Lemoine v. Springfield Hockey Association, Inc.,* 307 Mass. 102; *Alden v. Norwood Arena,* 332 Mass. 267.

We are of the opinion also that there was no prejudicial error in the denial of defendant's requests numbered 1 to 5 inclusive, all denied with a notation "See findings of fact". The issue of voluntary assumption of risk on

the part of the plaintiffs was a question of fact for the trial justice, as was the question of the defendant's negligence.

There was error in the allowance of the plaintiffs' request numbered 11 since the plaintiffs were not entitled to recover as a matter of law. However, the plaintiffs' requests for rulings numbered 6 to 11 inclusive were also allowed with a notation "See findings of fact". These findings made their allowance immaterial.

The report is to be dismissed.

Sullivan, Bowes & Curley, of Boston, for the Plaintiffs.

Badger, Parrish, Sullivan & Frederick, of Boston, for the Defendants.