LILLIAN SHAW *vs.* BOSTON AMERICAN LEAGUE
BASEBALL COMPANY
(and a companion case[1]).

Suffolk.    February 10, 1950. — March 6, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Negligence*, Baseball park, Assumption of risk, Violation of law. *Proximate Cause.*

Assuming that the proprietor of a baseball park in Boston violated
St. 1907, c. 550, § 105, as amended by St. 1912, c. 370, by causing
temporary seats to be placed in the "aisle" or "passageway" between
two boxes, so that one of the boxes became "crowded," such violation
could not properly have been found to be the proximate cause of
injury sustained by a patron sitting in that box when a foul ball struck
him "a split second" after he had seen it leave the player's bat.

A patron of a baseball park, who was a "fan" and familiar with the game
and who was seated in an unscreened box located approximately
seventy feet from home plate between home plate and first base,
voluntarily assumed the risk of injury which he sustained when struck
by a foul ball and could not recover from the proprietor of the park
for such injury.

Two ACTIONS OF TORT.    Writs in the Superior Court dated
June 15, 1944.

The actions were tried before *Dowd*, J., who ordered ver-
dicts for the defendant.    The plaintiffs alleged exceptions.

*R. N. Daley*, (*P. S. Ratzkoff* with him,) for the plaintiffs.

*S. P. Sears*, for the defendant.

SPALDING, J.    The female plaintiff, hereinafter called the
plaintiff, was struck and injured by a baseball while at-
tending a game at the defendant's baseball park, and out of
that incident these two actions of tort arose.    In one, the
plaintiff seeks compensation for her injuries.    In the other,
consequential damages are sought by her husband.    The
answers of the defendant included the defence of voluntary

[1]The companion case is by Richard Shaw against the same defendant.

assumption of risk. See *Sylvain* v. *Boston & Maine Railroad*, 280 Mass. 503, 505.

The defendant operates a ball park in Boston in which major league baseball games are played. It is agreed that on the day the plaintiff was injured the defendant was in control of the park, and that the plaintiff and her husband were there as business invitees.

These facts could have been found. On April 26, 1942, the plaintiff and her husband, accompanied by one Corcoran and his wife, went to the defendant's park to see a baseball game. Because it was Sunday and the game was being played with the "Yankees," a popular club, there was a "sell-out" crowd. The tickets, which had been purchased by Corcoran, called for seats in box A–31. This box was located between home plate and first base. The "A" boxes were those nearest the playing field. The box in question was in an enclosure nearly eight feet wide and was separated from the field by a concrete wall thirty-two inches high. There was no screening in front of the box. The distance from the front of the box to the rear was approximately six and one half feet. On either end of the enclosure was an iron railing which separated it from the adjoining boxes. At the rear of the enclosure there was also an iron railing, in the center of which was an opening twenty-two inches in width through which one passed to enter the boxes. Within the enclosure were two boxes. Box A–31 contained six seats (in two rows of three each), four of which were to the right of the opening as one faced the playing field. The other two seats were folding chairs which were unfolded and placed in the passageway or space opposite the opening, as needed. Box A–32 was to the left of the opening and contained four seats.

When the plaintiff's group arrived at the box the two folding chairs had not been set up and there were only four chairs in box A–31. The plaintiff took the seat in the front row nearest the railing on the right. Before the game started all of the seats in the enclosure were occupied, including the two folding chairs which had been set up by the

usher in the space opposite the opening to seat two men,
Silin and Hogan, who had joined the plaintiff's group.
Upon their arrival, Mrs. Corcoran, who had been sitting
next to the plaintiff, took the seat to her left, and Silin oc-
cupied the seat next to the plaintiff. Up to that time
"there was enough room to sit in the boxes"; the space be-
tween seats was about ten inches. Thereafter "the box in
which . . . [the plaintiff] was sitting was crowded." Her
right arm was touching the rail on her right and Silin "was
so close to her on her left that he was touching . . . her."

Although it does not appear that the plaintiff had ever
sat in a box before, she was a "fan" and had attended many
ball games. She knew that foul balls often landed in the
stands and that "the so called foul tip and . . . line drive
foul were very fast moving balls." Around the fifth or
sixth inning the plaintiff was struck on the head by a foul
ball. She saw it leave the bat and "turned up against the
rail . . . [until she] couldn't go any farther . . . and the
next thing she knew she was hit." "It all happened very
quickly." The interval of time between the ball leaving
the bat and her being struck was "a split second . . . it
was almost the snap of the finger." The distance between
home plate and the place where the plaintiff was sitting
was approximately seventy feet.

At the close of the evidence the defendant presented mo-
tions for directed verdicts, which were allowed subject to
the plaintiffs' exceptions. The sole question for decision is
whether the allowance of these motions was right.

The liability of the proprietor of a ball park to patrons
injured by balls batted or thrown during a game is a ques-
tion which has never been presented to this court. How-
ever, the basic principles governing such liability are not
new. In *Lemoine* v. *Springfield Hockey Association, Inc.*
307 Mass. 102 (a case where the plaintiff was injured while
attending a hockey game on the defendant's premises), it
was said, "One maintaining a place of amusement who has
invited the public to attend upon the payment of an ad-
mission fee is bound to exercise reasonable care to keep the

premises in a reasonably safe condition for their use, and to warn them against any dangers which he knows or ought to know they might encounter while upon the premises and which they reasonably could not be expected to know. . . . But no warning is required to be given to one who already has become apprized of the danger or where the situation is so obvious that a person of ordinary intelligence would readily sense the likelihood of impending harm and would take active measures to avert it" (page 104). To the same effect are *Shanney* v. *Boston Madison Square Garden Corp.* 296 Mass. 168, and cases therein cited.

Cases involving baseball have arisen in other jurisdictions and it has uniformly been held — and correctly we think — that a spectator familiar with the game assumes the reasonable risks and hazards inherent in the game. *Hudson* v. *Kansas City Baseball Club, Inc.* 349 Mo. 1215, 1224. *Crane* v. *Kansas City Baseball & Exhibition Co.* 168 Mo. App. 301. *Kavafian* v. *Seattle Baseball Club Association,* 105 Wash. 215, 219–221. *Brisson* v. *Minneapolis Baseball & Athletic Association,* 185 Minn. 507. See note in 142 A. L. R. 868 et seq. And it is common knowledge that one of those hazards is the possibility of being hit by a foul ball. In cases where recovery has been permitted the rule just stated has been recognized and liability was imposed either because the plaintiff was unfamiliar with the game or because the risk was not the ordinary one. *Wells* v. *Minneapolis Baseball & Athletic Association,* 122 Minn. 327 (plaintiff unfamiliar with game). *Edling* v. *Kansas City Baseball & Exhibition Co.* 181 Mo. App. 327 (plaintiff injured by ball passing through defective screen). *Cincinnati Base Ball Club Co.* v. *Eno,* 112 Ohio St. 175 (plaintiff's injury caused by ball hit during batting practice which was conducted close to grandstand). *Grimes* v. *American League Baseball Co.* 78 S. W. (2d) 520 (Mo. App.) (ball striking temporary stands erected in close proximity to playing field and caroming into box).

The plaintiff does not argue that the place where she was sitting should have been screened. And she concedes

that a spectator who is familiar with the game ordinarily assumes the risk of being hit by a batted ball. But she argues that the risk to which she was exposed when she was injured was not the ordinary one arising from the mere passage of the ball from the player's bat into the stands. The defendant, she contends, was negligent in providing inadequate and unsafe seating arrangements in the box where she was sitting which "unreasonably restricted her freedom of movement and created an unreasonable exposure to the hazard of being injured by a foul ball." As evidence of such negligence the plaintiff relies on a violation of St. 1907, c. 550, § 105,[1] as amended by St. 1912, c. 370, which reads in part as follows: "No temporary seats or other obstructions shall be allowed in any aisle, passageway or stairway of a place of public assemblage, and no person shall remain in any aisle, passageway or stairway of any such building during any performance." The plaintiff argues that the space between the two boxes before the folding chairs were set up constituted an "aisle" or "passageway" within the purview of the statute; that in causing the chairs to be placed in that space the defendant violated the statute; and that one of the consequences which the statute was designed to prevent was the increased risk of physical injury to spectators from batted balls by reason of lack of mobility due to overcrowding. It may be doubted whether the space between the boxes was an "aisle" or "passageway" within the intent of the statute. However, since it will not affect the result, we assume in the plaintiff's favor that it was. We also assume that one of the purposes of the statute was the prevention or reduction of accidents of the sort that occurred here.

It is familiar law that a violation of a statute is evidence of negligence as to all consequences it was intended to prevent. *Kralik* v. *LeClair*, 315 Mass. 323, 326–327. *Friese* v. *Boston Consolidated Gas Co.* 324 Mass. 623, 630. But

---

[1] This statute was repealed by the Boston Building Code (St. 1938, c. 479, §§ 102, 105) upon its acceptance by the city in 1943.

"Negligence consisting in whole or in part of violation of law, like other negligence, is without legal consequence unless it is a contributing cause of the injury." *Baggs* v. *Hirschfield*, 293 Mass. 1, 3. *Deignan* v. *Lubarsky*, 318 Mass. 661, 664. We are of opinion that, if there was any breach of duty on the part of the defendant it had no causal relation to the accident. The accident occurred in a "split second." When the plaintiff saw the ball she "turned up against the rail." The evidence would not warrant a finding that the placing of the seats in the space between the boxes had any appreciable effect on her conduct. Her position in the box was the same after the chairs were put there as before, except that there was less space and she was touching the person on her left. But this affords no reasonable basis for an inference that, had the temporary seats not been there, she would have acted otherwise and avoided the accident. It is at least as likely that in the excitement of the moment her efforts to avoid being hit would have been exactly the same. It has been said that "What is a contributing cause of an accident is usually a question for a jury, to be determined by the facts of the particular case." *Newcomb* v. *Boston Protective Department*, 146 Mass. 596, 604. But to permit a jury to find on this record that the defendant's conduct was a cause of the accident would authorize them to indulge in speculation and surmise. We are of opinion that the placing of the chairs between the boxes was merely a condition or circumstance and not a cause of the plaintiff's injuries. *Kralik* v. *LeClair*, 315 Mass. 323, 326–327. *Lockling* v. *Wiswell*, 318 Mass. 160, 165. *Deignan* v. *Lubarsky*, 318 Mass. 661, 664.

The plaintiff's position is that of a spectator familiar with the game who was injured by an ordinary risk of the game which she had voluntarily assumed. The judge rightly ordered verdicts for the defendant. The plaintiff's husband could not recover for consequential damages if the plaintiff had no case. *Thibeault* v. *Poole*, 283 Mass. 480, 486–487.

*Exceptions overruled.*