MANUEL SILVIA *vs.* RAYMOND J. WOODHOUSE & another.

Bristol.     April 9, 1969. — June 3, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Negligence*, Wrestling, Assumption of risk, Contributory, Independent contractor. *Agency*, What constitutes, Independent contractor.

A finding of negligence on the part of the owner and operator of an arena, who was in control of its condition and seating arrangement during a wrestling match and had observed wrestlers ejected by their opponents from the ring be knocked backward by them while attempting to reënter the ring, toward a patron in a front row seat who had not made such observations and was injured when a wrestler trying to reënter the ring was punched by his opponent and fell backward directly onto the patron was warranted by the evidence, either on the ground of failure to warn the patron of the danger of being struck by a wrestler or of failure to place the seats at a safer distance from the ring [123]; the evidence did not require rulings as a matter of law that the patron

---

[2] Allied subbid                    $291,800
    Brandt-Jordan subbid        284,346
                                              ─────────
                                              $   7,454

assumed the risk of the injury sustained or was contributorily negligent [123].

Wrestlers participating in wrestling bouts conducted by a matchmaker who were paid by him from the gate receipts but were given no instructions by him other than the time limit of the bouts were independent contractors, and, the bouts not being inherently dangerous to spectators, the matchmaker as a matter of law was not liable for injuries sustained by a spectator in a front row seat when a wrestler was punched by his opponent and fell onto the spectator. [124]

TORT. Writ in the Superior Court dated May 2, 1963.

The action was heard by *Taveira, J.*

*Charles R. Desmarais* for Raymond J. Woodhouse.

*William J. Fenton* for Santos Wrestling Enterprises, Inc.

*John F. O'Donoghue* for the plaintiff.

SPALDING, J. This is an action of tort in which the plaintiff seeks to recover damages for personal injuries alleged to have been sustained as a result of the negligence of the defendants, Santos Wrestling Enterprises, Inc. (Santos) and Raymond J. Woodhouse (Woodhouse). Count 1 of the declaration against Santos alleged that the plaintiff, while attending a wrestling match that was conducted under the supervision, control, and consent of Santos, sustained injuries because the premises in which the match was conducted were not reasonably safe and because Santos failed to warn the plaintiff of the dangers that existed. Count 2 alleged that Santos, its agents, and its servants negligently conducted the wrestling event, with the result that the plaintiff was injured. The declaration against Woodhouse contained allegations similar to those in count 1 against Santos.

At the close of the evidence each defendant moved for a directed verdict, both of which motions were denied, subject to the defendants' exceptions. The jury returned a verdict for the plaintiff against each defendant. The sole question is whether these motions were properly denied.

The evidence may be summarized as follows. On the evening of September 26, 1962, the plaintiff attended a series of wrestling matches held in the Woodhouse Arenatorium, in Dartmouth, Massachusetts. He purchased a

ticket for a reserved seat in the front row. About five minutes after the first match began, one of the wrestlers picked up his opponent, who weighed about 290 pounds, and threw him over the top rope of the ring. He tumbled to the apron and then to the floor, where he hit the plaintiff's left leg.[1] As the wrestler tried to climb back through the ropes, his opponent punched him, causing him to fall backwards directly onto the plaintiff, whose knee was thus seriously injured. This occurred only a few seconds after the wrestler was first thrown from the ring.

There were three ropes which extended around each side of the ring. On each side there was an apron which extended about three feet beyond the ropes. Since the front row seats were about three feet from the outer edge of the apron, the plaintiff's seat was about six feet from the ropes. The spectators "sat in normal upright fashion so that . . . [their] knees were somewhat closer to the ring than the edge of the seat." "There were no signs warning of any danger of the wrestlers falling or being thrown from the ring, nor was any warning given in any other fashion."

The plaintiff had previously attended wrestling matches at the "arenatorium" on four or five occasions, during which he sat in the same seat and never observed a wrestler either thrown from the ring or struck in the face and knocked out of the ring into the spectators. On cross-examination, he testified that he had seen wrestlers fall onto the apron, and that about five or six times he had seen them fall between the ropes, onto the apron, and then onto the floor. But these wrestlers, he believed, had voluntarily left the ring to "get away from the bout, and to rest."

Woodhouse testified that he owned and operated the arena and that it was under his control. He did the promotional work for the matches and was in charge of setting up the seats. The wrestlers and referee for each match were supplied by Santos, and the receipts were divided equally between Santos and Woodhouse. During the time

---

[1] This occurrence is not the basis of the present action.

Woodhouse had conducted wrestling matches in the arena, he had observed wrestlers being ejected from the ring on many occasions. He had also seen wrestlers, while attempting to climb back in the ring, knocked backward when struck in the face or apparently kicked by their opponents. Woodhouse had only watched about a dozen bouts.

The president of Santos testified that he was the matchmaker who arranged the "line-up" for the bouts. Of the fifty per cent of the receipts which Santos received, it kept ten per cent, and the other forty was divided among the wrestlers and referees. No wrestler was told who was to win or lose, and the only instruction given was in regard to the time limit for each bout. Sometimes the president of Santos would ask a superior wrestler to "take it easy" with an opponent of unknown ability in order to test the latter's skill. During a match a wrestler would perform many acts of showmanship, because that is what the spectators expected. These acts included stepping out of the ring voluntarily and being thrown over the ropes. The president of Santos further testified that he had seen wrestlers thrown bodily out of the ring and into the spectators.

1. The defendant Woodhouse's motion for a directed verdict was properly denied. The duty owed by Woodhouse to the plaintiff, a business invitee, is familiar law and may be stated briefly. A person maintaining a place of amusement, to which the public has been invited, is bound to exercise reasonable care to keep the premises in a reasonably safe condition for the use of the patrons and to warn them of the dangers which he knew or ought to have known they might encounter there and of which they could not reasonably be expected to know. *Lemoine* v. *Springfield Hockey Assn. Inc.* 307 Mass. 102, 104. *Shaw* v. *Boston Am. League Baseball Co.* 325 Mass. 419, 421–422. *Alden* v. *Norwood Arena, Inc.* 332 Mass. 267, 271. *Byron* v. *Fresh Pond Open Air Theatre*, 333 Mass. 121, 123. No warning need be given, however, to one who already has become apprised of the danger or when the danger would be obvious to any ordinarily intelligent person. *Lemoine* v.

*Springfield Hockey Assn. Inc.* 307 Mass. 102, 104.  *Underhill* v. *Shactman,* 337 Mass. 730, 734.

We are of opinion that a finding of negligence on the part of the defendant Woodhouse was warranted because of his failure to warn the plaintiff of the danger of being struck by a wrestler, or his failure to place the seats at a safer distance from the ring.  Woodhouse testified he had seen wrestlers ejected from the ring and knocked backward while attempting to reënter the ring.  The plaintiff had not made similar observations, and so the danger was not equally apparent to both parties.  Compare *Katz* v. *Gow,* 321 Mass. 666.  Nor was the risk of the injury sustained here so obvious that a person of ordinary intelligence would have foreseen it.  See *Shanney* v. *Boston Madison Square Garden Corp.* 296 Mass. 168, 171.

Woodhouse, relying on *Shaw* v. *Boston Am. League Baseball Co.* 325 Mass. 419, argues that the plaintiff assumed the risk of injury and therefore cannot recover.  In the *Shaw* case the plaintiff, a baseball spectator who was familiar with the game, was held as a matter of law to have assumed the ordinary risk of being hit by a foul ball.  But the risk of a wrestler being thrown out of the ring was much less open and obvious, and the evidence was not such as to require us to rule as matter of law that the plaintiff assumed that risk.  See *Alden* v. *Norwood Arena, Inc.* 332 Mass. 267, 271; *Dusckiewicz* v. *Carter,* 115 Vt. 122.

There was even less evidence that the plaintiff was contributorily negligent as a matter of law in failing to perceive that he was in danger and to remove himself from the area immediately after the wrestler was first thrown out of the ring.  At all events the question of his due care was one for the jury.

2. Count 1 of the declaration against Santos alleged that the plaintiff was injured because of the negligent maintenance of the premises, which allegedly were under the control of Santos.  Liability for damages caused by the condition of the premises depends upon control of the offending instrumentality, either through ownership or otherwise.

*Underhill* v. *Shactman*, 337 Mass. 730, 733. *Cronin* v. *Universal Carloading & Distrib. Co. Inc.* 348 Mass. 645, 648. *Buck* v. *Clauson's Inn at Coonamessett, Inc.* 349 Mass. 612, 615. But it is clear that Woodhouse, rather than Santos, not only owned the arena but also controlled the seating arrangement and the condition of the premises. Therefore Santos's motion for a directed verdict on count 1 should have been granted.

Count 2 of the declaration alleged that Santos, its agents, and its servants negligently conducted the wrestling event. Santos would be liable only if the doctrine of respondeat superior applied. In general the existence of a master-servant relationship depends on whether there is a right to control. *McDermott's Case,* 283 Mass. 74, 76–77. *Cowan* v. *Eastern Racing Assn. Inc.* 330 Mass. 135, 141. Restatement 2d: Agency, § 220. Compare *Konick* v. *Berke, Moore Co. Inc.* 355 Mass. 463. We are of opinion that the evidence did not show that Santos had the right to control the activities of the wrestlers. There was no evidence to prove that Santos was more than the matchmaker for the wrestlers or that it gave any instructions to them beyond those relating to the time limit of the bouts. The wrestlers, therefore, were independent contractors. Their work was not inherently or intrinsically dangerous (except perhaps to themselves), and Santos was not liable for any torts they may have committed. *Whalen* v. *Shivek,* 326 Mass. 142, 150. Thus, Santos's motion for a directed verdict on count 2 should have been granted.

3. The exceptions of the defendant Woodhouse are overruled. The exceptions of the defendant Santos are sustained, and judgment is to be entered for Santos.

*So ordered.*