JANE COSTA *vs.* THE BOSTON RED SOX BASEBALL CLUB.

No. 02-P-1433.

Norfolk. December 10, 2003. - June 9, 2004.

Present: GELINAS, KAPLAN, & COHEN, JJ.

*Negligence,* Duty to warn, Athletics, Open and obvious danger.

In a civil action, the judge properly granted summary judgment in favor of the defendant baseball club, where the plaintiff, who while attending a sporting event at the defendant's stadium was struck in the face with a batted baseball, failed to demonstrate that the defendant owed her a duty to warn of the danger of being hit by a batted ball, in that the danger was sufficiently obvious as a matter of law that the defendant reasonably could conclude that a person of ordinary intelligence would perceive the risk and need no additional warning. [301-304]

CIVIL ACTION commenced in the Superior Court Department on November 21, 2000.

The case was heard by *Patrick F. Brady,* J., on a motion for summary judgment.

*James R. Burke* for the plaintiff.

*Douglas L. Fox* for the defendant.

*Thomas J. Ostertag,* for Office of the Commissioner of Baseball, amicus curiae, submitted a brief.

COHEN, J. On a September evening in 1998, the plaintiff and three companions attended a Boston Red Sox baseball game at Fenway Park. They arrived late, at the top of the fifth inning. The plaintiff took her seat in an unscreened area in the upper box section on the first base line, more or less behind the Red Sox dugout. Several players from the visiting team, the Detroit Tigers, batted before their side was retired. In the bottom of the fifth, the first batter for the Red Sox was Darren Lewis. On a count of one ball and two strikes, Lewis hit a line drive foul ball into the stands along the first base line. The ball struck the

plaintiff in the face, causing severe, permanent injuries. She had been in the ballpark no more than ten minutes when she was hurt.

It is not disputed that, while passively watching the game, the plaintiff's life was forever changed by this tragic event. What is disputed is whether the defendant Boston Red Sox Baseball Club may be compelled to compensate the plaintiff for her injuries. A judge of the Superior Court granted the defendant's motion for summary judgment. We agree that, as matter of law, the plaintiff may not recover on the only theory she advances — negligent failure to warn of the danger of being hit by a foul ball — and, accordingly, we affirm.[1]

We view the summary judgment record, as we are required to do, in the light most favorable to the plaintiff. See *Alioto* v. *Marnell*, 402 Mass. 36, 37 (1988); *Thorell* v. *ADAP, Inc.*, 58 Mass. App. Ct. 334, 335 (2003). In addition to the facts outlined above, the record reveals the following.

Foul ball injuries occur with some regularity at Fenway Park. A spreadsheet produced by the defendant, summarizing five years of data during the 1990's, showed that the annual number of injuries sustained by patrons from foul balls ranged from thirty-six to fifty-three, with a substantial number requiring medical attention. While some of these incidents were listed as involving patrons who were injured while attempting to catch the ball, many others were not. Moreover, avoiding injury from a ball hit into the stands sometimes may be close to impossible. According to a professor of engineering retained by the plaintiff, the plaintiff had virtually no time to react to the ball that came her way. He determined, with the help of a range finder, that the distance from the plaintiff's seat to home plate was forty-seven yards, or 141 feet. By analyzing a videotape of the game, he also determined that the minimum speed of the baseball at the time it struck the plaintiff was ninety miles per hour, or 132 feet per second. Thus, he concluded, the plaintiff had no more than 1.07 seconds from the time Lewis hit the ball to take evasive action.

At her deposition, the plaintiff professed marked ignorance of

---

[1] We acknowledge the amicus brief submitted by the office of the commissioner of baseball.

the sport of baseball. Except for one occasion when she sat in the bleachers with her father when she was eight years old, she had never attended a baseball game prior to the night of the accident. She had not seen baseball on television except while changing channels, and did not watch sports reports or read about sports in the newspaper. Before the evening of her injury, she understood a foul ball to be one that simply rolled off to the side after being hit. As atypical as this may seem in "Red Sox Nation," we accept for present purposes (as we must) that the plaintiff had no subjective understanding of the risks posed by an errant foul ball.

There is an area behind home plate where netting protects approximately 2,511 seats; however, the plaintiff does not contend that the netting should have extended to the area where she was seated, or otherwise question the design of the ballpark. She claims only that she was entitled to an adequate warning of the dangers of sitting in an unprotected location so that she could have made an informed choice whether to remain there. She acknowledges the existence of a disclaimer printed on her admission ticket but maintains that she did not look at the ticket and that, in any event, the disclaimer was not adequate to discharge the defendant's duty to warn, particularly since the print was extremely small.[2] She notes that, after the date of her injury, signage was installed along the first base line reading "BE ALERT. FOUL BALLS AND BATS HURT." Such signage, according to the plaintiff, was feasible and necessary before her accident. She claims that had she been adequately informed of the danger, she would not have exposed herself to the risk of injury presented by the location of her seat.

We turn now to the relevant law. It has been more than fifty years since a case like the plaintiff's has been considered on appeal in Massachusetts. In *Shaw* v. *Boston Am. League Baseball Co.*, 325 Mass. 419 (1950), the Supreme Judicial Court held, as matter of law, that a baseball club was not liable to a spectator

---

[2]The disclaimer reads, in relevant part: "The holder assumes all risk and danger incidental to the game of baseball including specifically (but not exclusively) the danger of being injured by thrown bats and thrown or batted balls and agrees that the participating clubs, their agents and players are not liable for injuries resulting from such causes."

who was injured by a foul ball. *Id.* at 424. *Shaw* rested on the doctrine of assumption of risk and therefore turned on the plaintiff's subjective knowledge and appreciation of the danger. *Ibid.* See generally *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 882 (1978). The plaintiff in *Shaw* was an admitted "fan" who had attended many baseball games and who knew that fast-moving foul balls often landed in the stands. *Shaw* v. *Boston Am. League Baseball Co.*, *supra* at 421. On those facts, the court had little difficulty concluding that the defendant was shielded from liability because the "plaintiff's position [was] that of a spectator familiar with the game who was injured by an ordinary risk of the game which she had voluntarily assumed." *Id.* at 424.

The present case stands on a different footing from *Shaw*, both legally and factually. As to claims arising on or after January 1, 1974, assumption of risk was abolished as an affirmative defense, see G. L. c. 231, § 85, as appearing in St. 1973, c. 1123, § 1; and here the plaintiff must be taken as ignorant of the danger of being hit by a foul ball. In spite of these distinctions, however, we conclude that the plaintiff still cannot recover.

"Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury." *Davis* v. *Westwood Group*, 420 Mass. 739, 742-743 (1995). Here, the asserted duty is the duty to warn of the dangers of foul balls. Although an owner or possessor of land owes to all persons lawfully on the premises a common-law duty of reasonable care to maintain the property in a reasonably safe condition and "to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware," *O'Sullivan* v. *Shaw*, 431 Mass. 201, 204 (2000), quoting from *Davis* v. *Westwood Group*, *supra* at 743, the duty to warn does not extend to dangers that would be obvious to persons of average intelligence. *O'Sullivan* v. *Shaw*, *supra*. "[W]here a danger would be obvious to a person of ordinary perception and judgment, a landowner may reasonably assume that a visitor has knowledge of it and, therefore, 'any further warning would be an empty form' that would not reduce the likelihood of result-

ing harm." *Ibid.*, quoting from *LeBlanc* v. *Atlantic Bldg. & Supply Co.*, 323 Mass. 702, 705 (1949). See *Greenslade* v. *Mohawk Park, Inc.*, 59 Mass. App. Ct. 850, 853-854 (2003).

This principle exists independently of the doctrine of assumption of risk and was unaffected by the enactment of G. L. c. 231, § 85. *O'Sullivan* v. *Shaw, supra* at 205-206. As the Supreme Judicial Court explained, the abolition of assumption of risk as an affirmative defense did "not alter the plaintiff's burden in a negligence action to prove that the defendant owed him a duty of care in the circumstances, and thus [left] intact the open and obvious danger rule, which operates to negate the existence of a duty of care," at least insofar as a duty to warn is concerned. *Id.* at 206.

Viewing the present case through the lens of the defendant's duty, we are persuaded that the potential for a foul ball to enter the stands and injure a spectator who is seated in an unscreened area is, as matter of law, sufficiently obvious that the defendant reasonably could conclude that a person of ordinary intelligence would perceive the risk and need no additional warning. Even someone of limited personal experience with the sport of baseball reasonably may be assumed to know that a central feature of the game is that batters will forcefully hit balls that may go astray from their intended direction. We therefore hold that the defendant had no duty to warn the plaintiff of the obvious danger of a foul ball being hit into the stands.[3]

The result we reach is consistent with the vast majority of reported decisions involving injuries to spectators at baseball games. See Annot., Liability to Spectator at Baseball Game Who Is Hit by Ball or Injured as Result of Other Hazards of Game, 91 A.L.R.3d 24 (1979 & Supp. 2003). Although cases in other jurisdictions have turned on a variety of tort doctrines, they reflect a consensus that baseball stadium owners should not be held responsible for injuries to spectators that result from balls leaving the field during play — at least if adequate safety screening has been provided to protect areas of the stadium in the vicinity of home plate, where the danger is thought to be

---

[3]In view of our decision, we need not consider the plaintiff's contention that the language appearing on the back of her ticket did not operate as a valid disclaimer of liability.

most acute. As a consequence, injured fans like the plaintiff are left to bear the costs of their injuries, even though they played no role in causing them except by choosing to attend the game.

In its amicus brief, the office of the commissioner of baseball, paraphrasing then Chief Judge Cardozo, justifies this result with the cavalier observation that "the timorous may always choose to stay at home." See *Murphy* v. *Steeplechase Amusement Co.*, 250 N.Y. 479, 483 (1929). Perhaps a more gracious approach would be for major league baseball to elect to internalize the costs of unavoidable injuries sustained by fans through no fault of their own. On the theory the plaintiff has asserted, however, we do not so require.

*Judgment affirmed.*