Fremont-Smith, Thayer, J.
I.Legal Standard
Summary judgment is appropriate only where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Mass.R.Civ.P. 56(c). The moving pariy bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). When this is asserted, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue of material fact. Id. The summary judgment record must be viewed in the light most favorable to the nonmoving party. Costa v. Boston Red Sox Baseball Club, 61 Mass.App.Ct. 299, 300 (2004).
II.Sexual Harassment Claim
It is an unfair educational practice “[t]o sexually harass students in any program or course of study in any educational institution.” G.L.c. 151C, §2(g). Section 1(e) defines sexual harassment as follows;
any sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when — (i) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of the provision of benefits, privileges or placement services or as a basis for the evaluation of academic achievement; or (ii) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual’s education by creating an intimidating, hostile, humiliating or sexually offensive educational environment.
a. Condition of Benefits
If an educator makes submission to or rejection of sexual advances, requests or conduct either explicitly or implicitly a term or condition of benefits, a quid pro quo violation of G.L.ch. 151C, § 1 (e)(i), has occurred. Verbal or physical conduct of a sexual nature, even if it does not include sexual advances or requests for sexual favors, comes within the statutory definition of sexual harassment. Cf. Melnychenko v. 84 Lumber Co., 424 Mass. 285, 290 (1997) (applying G.L.c. 151B). However, “conduct devoid of any sexual connotation” cannot sustain of sexual harassment. Cf. Mullenix v. Forsyth Dental Infirmary for Children, 965 F. Sup. 120, 154 (D.Mass. 1996) (applying G.L.c. 151B).
Aside from engaging in other alleged conduct arguably sexual in nature, including standing too close to Krauss, becoming visibly upset at the mention of his fiance and holding him after class to discuss personal matters, Diamond allegedly told Krauss that he would have to make her “happy” to pass the course. Diamond contends that she desired only for Krauss to produce good work. However, Krauss argues that this comment was sexual in nature and a condition of his success in the clinic. Taken together, if proven, Diamond’s actions, though not explicitly sexual in nature, could be seen by a jury as sexual advances, submissions to which was a condition of educational benefits. See G.L.c. 151C, §l(e)(i). Therefore, a triable issue exists and summary judgment as to alleged sexual harassment under c. 151C is inappropriate.
b. Hostile Environment
To establish a claim for hostile environment sexual harassment, the conduct in question must be of such a severe and pervasive nature as to affect or interfere with the educational process. Cf. Ramsdell v. Western Mass. Bus Lines, 415 Mass. 673, 678 (1993) (applying G.L.c. 151B). When determining whether summary judgment is warranted, the court considers all the circumstances, including the frequency and severity of the conduct; whether it is intimidating, physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with a student’s program. See Morrison v. Northern Essex Community College, 56 Mass.App.Ct. 784, 798 (2002) (discussing hostile imprisonment under Title IX). However, “(s)ubject to some policing at the outer bounds, it is for the jury to weigh those factors and decide whether a reasonable person would have felt that it affected . . . education,” (internal quotations omitted). Id. at 798.
Here, although Diamond’s alleged conduct may not have been extraordinarily severe, there undoubtedly is a material question as to whether it could be found to have been sufficiently severe or pervasive as to interfere with Krauss’ education. Krauss alleges, with factual support, that because he spumed her romantic and sexual advances, Diamond’s treatment of him changed. Specifically, she examined his work with more scmtiny than his female counterparts, changed his assignments at the last minute and labeled him “unsafe” as a nurse, all of which led to him failing his nursing clinic. It would not be unreasonable for a jury to find that this conduct, if proven, interfered with Krauss’ education. Therefore, summary judgment is not warranted.
III.Intentional Interference Claim as to Diamond
A claim for intentional interference with a contract requires a plaintiff to show that (1) he had a contract or contemplated contract with a third party; (2) the defendant knowingly induced the third parly to break or alter the contract; (3) the defendant’s interference conduct was improper in motive or means; and (4) the plaintiff was harmed by the defendant’s actions. Draghetti v. Chmielewski 416 Mass. 808, 816 (1994). *444 Defendants’ motion addresses only prong three, so this decision will address only that prong.
a. Improper Means
In educational and academic decisions, an “actual malice” standard is applied. Shocrylas v. Worcester State College, 2009 WL 3298126 *10 (D.Mass. 2009) (holding that Massachusetts would, at a minimum, when acting within scope of employment, apply the actual malice standard that is applied in the employment context). To prevail under this standard, the plaintiff must show that the defendant interfered with his participation in the Nursing program by acting with “actual malice,” a spiteful and malignant purpose unrelated to the educational interest at issue, see Blackstone v. Cashman, 448 Mass. 255, 261, (2007), or with improper motive or means. United Trucking Leasing Corp. v. Geltman, 406 Mass. 811, 816 (1990). Malice and improper motive “may be shown by the proof of facts from which a reasonable inference” may be drawn. Gram v. Liberty Mutual Ins. Co., 384 Mass. 659, 664 (1981).
Plaintiff argues that Diamond acted with actual malice and a purpose unrelated to education when suggesting to McCarthy that he was “unsafe” as a nurse practitioner. Diamond insists that her evaluation of Krauss was based purely on her opinion of his nursing skills. Plaintiff contends, however, that because he spumed Diamond’s romantic advances— standing close to him, implying she is single and needs a boyfriend, telling Krauss he needs to keep her “happy” to pass the clinic, keeping Krauss after class to discuss personal matters, becoming visibly upset at the mention of Krauss’ fiance — her behavior towards him, which up until that point had been congenial and lighthearted, drastically changed. Diamond allegedly began scrutinizing his work far more than Krauss’ female counterparts and changed his clinic assignments at the last minute, making it nearly impossible for him to prepare adequately. The culmination of this markedly changed behavior, according to Krauss, occurred when Diamond told McCarthy he was “unsafe,” eventually leading to Krauss failing the clinic.
Although it is unclear whether Krauss can prevail at trial, a fact finder could reasonably infer from these facts that Diamond was not acting with proper motives, but rather out of malice as a scorned woman. Consequently, the plaintiff has successfully raised a triable issue of material fact, and therefore summary judgment for intentional interference with his contract with the Program is inappropriate.
IV. Intentional Infliction of Emotional Distress
Under Massachusetts law, the elements of intentional infliction of emotional distress are that (1) the actor intended to inflict emotional distress, or that he knew or should have known that emotional distress was the likely result; (2) the conduct was “extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community”; (3) the conduct was the cause of the emotional distress; and (4) the distress suffered was “severe and of such a nature that no reasonable person could be expected to endure it.” Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997).
a. Extreme and Outrageous
The standard for extreme and outrageous conduct is very stringent. “[T]he door to recovery [is] opened but narrowly and with due caution” (internal quotations omitted). Agis v. Howard Johnson Co., 371 Mass. 140, 144 (1976). Liability cannot be predicated upon “mere insults, indignities, threats, annoyances, petty oppressions or other trivialities,” nor is it enough “that the defendant has acted with an intent which is tor-tious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by ”malice[.]" Restatement Second of Torts §46, comment d (1965). Rather, the conduct must be so “outrageous in character,” and so “extreme in degree,” as to go “beyond all possible bounds of decency.” Id. Massachusetts cases have similar qualifications for extreme and outrageous behavior. See Agis, 371 Mass. at 144-45.
The lion’s share of cases on the subject indicate that the behavior in question fails to qualify as “extreme and outrageous.” Compare Bowman v. Heller, 420 Mass. 517, 520 (1995) (holding that defendant’s act of creating and distributing photocopies of another coworker’s face superimposed on photographs of women in pornographic poses was extreme and outrageous), and Simo v. Solomon, 385 Mass. 91, 97 (1982) (holding that landlord’s failure to repair a flooding problem, which led to tenant’s apartment being flooded over thirty times, was outrageous conduct), with Harvard Univ. v. Goldstein, 2000 WL 282537 at *3 (Mass. Super. 2000) (holding that Harvard’s dismissal of a graduate student while sick was not outrageous), and Conley v. Romeri 60 Mass.App.Ct. 799, 804-805 (2004) (finding that defendant's conduct was not outrageous when holding himself out as capable of fathering children to induce sex).
When reviewing the facts of this case in light of the aforementioned cases, a juiy could not reasonably find the defendants’ “conduct [to be] extreme and outrageous.” Redgrave v. Boston Symphony Orchestra, 557 F.Sup. 230, 236 n.7 (D.Mass. 1983) (as a threshold matter, the judge must find defendant’s conduct could reasonably be viewed as outrageous). While the alleged actions of Diamond and the Program were arguably reprehensible in nature and motive, they could not be found to be sufficiently malignant to reach the level of extreme and outrageous. Beecy v. Puccarelli 387 Mass. 589, 596 (1982). Consequently, Krauss cannot satisfy the elements of intentional infliction of emotional distress, and summary judgment is appropriate for this claim.
V. Breach of Contract
When evaluating breach of contract matters involving academic disciplinary hearings, Massachusetts *445 courts apply a basic fairness standard. Schaer v. Brandeis Univ., 432 Mass. 474, 481 (2000). Moreover, where schools include disciplinary protocols in their student handbooks, courts generally defer to these protocols when determining whether the school has contravened basic fairness. Driscoll v. Board of Trustees of Milton Academy, 70 Mass.App.Ct. 285, 293 (2007); Ackerman v. President of College of Holy Cross, 2003 WL 1962482 at *2 (Mass.Super. 2003).
In this case, the Program’s handbook requires a prompt investigation of all sexual harassment claims. Whether the Program conducted an investigation is in dispute. McCarthy claims that she investigated the matter by speaking with Diamond and witnesses. However, Diamond disputes the claim that she conducted a thorough investigation. Additionally, the Program’s handbook requires each student to be informed of the allegations prior to the hearing. Plaintiff argues, apparently without dispute, that he was virtually “ambushed” at the hearing. He had never been told what the hearing was about, nor was he given a chance to supply witnesses to defend his position. Meanwhile, Diamond read from a script that was obviously prepared before the hearing. These alleged facts raise a triable issue that the Program did not follow its own hearing protocols, thereby contravening basic fairness. Summaiy judgment for breach of contract against the Program is therefore not appropriate.
VI. Defamation
The elements applicable to the claim of defamation are (1) a statement of and concerning the plaintiff was communicated to a third party, (2) the statement could damage the plaintiffs reputation, (3) the statement was made negligently and (4) the statement caused economic harm or is actionable without proof of economic harm. Reilly v. Associated Press, 59 Mass.App.Ct. 764, 768-69 (2003). Because Defendants’ motion does not address these elements, but rather sets forth various affirmative defenses to the defamation claim, this decision will address those defenses only.
a. Opinion
The Defendants contend that Diamond’s statement was pure opinion, and thus constitutionally protected. While this is true, even statements of opinion can be actionable if the opinion is based on undisclosed defamatory facts. See Id. at 770. If the underlying facts are disclosed, the opinion is actionable only if the disclosed facts are both false and defamatory. Fleming v. Benzaquin, 390 Mass. 175, 187-88 (1983).
Diamond’s opinion was that Krauss exhibited “unsafe” nursing skills. This opinion was based on the following facts, which she disclosed to McCarthy: Krauss required three attempts to fill a syringe with insulin and discharged the insulin while attempting to make an injection; Krauss failed to properly dispose of the syringe in the safest possible manner; Krauss’ respiratory diagnosis differed from the teacher’s diagnosis on two occasions. Because these facts were disclosed, Krauss’ defamation claim can only stand if the facts are both false and defamatory. Krauss indeed alleges that these facts are false. However, these facts alone could not be considered defamatory. Disclosure of these facts, apart from also disclosing an opinion as to safety, would not reasonably lead one to believe that Krauss is unsafe as a nurse. Thus, the facts in and of themselves are not defamatory, so that Diamond’s opinion of Krauss’ safety is not defamatory. The defamation claim is therefore dismissed.
ORDER
Accordingly, the defendants’ motion for summaiy judgment is ALLOWED as to Counts IV (intentional infliction of emotional distress) and V (defamation). It is DENIED as to Counts I (c. 151C), II (breach of contract) and III (intentional interference with a contract).